# IN THE UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF OHIO
## EASTERN DIVISION

| | | |
|---|---|---|
| MICHAEL BUEHNER, | ) | |
| | ) | |
| Plaintiff, | ) | CASE NO. 1:24-cv-01218 |
| v. | ) | |
| | ) | |
| CITY OF CLEVELAND, *et al.*, | ) | JUDGE PAMELA A. BARKER |
| | ) | |
| Defendants. | ) | |
| | ) | |
| | ) | |
| | ) | |

## DEFENDANT CLEVELAND OFFICERS' MEMORANDUM IN SUPPORT OF MOTION FOR JUDGMENT ON THE PLEADINGS

Respectfully submitted,

*/s/ John D. Latchney*
Kenneth A. Calderone (0046860)
John D. Latchney (0046539)
Hanna, Campbell & Powell, LLP
3737 Embassy Parkway, Suite 100
Akron, OH  44333
Telephone:  (330) 670-7324 / (330) 670-7602
Facsimile:   (330) 670-7440 / (330) 670-7458
Email:  *kcalderone@hcplaw.net*
            *jlatchney@hcplaw.net*
*Attorneys for Defendants Sahir Hasan,*
*Michael Beaman, and Joseph Petkac*

# TABLE OF CONTENTS

TABLE OF CONTENTS............................................................................................................. ii

TABLE OF AUTHORITIES ................................................................................................... iv

STATEMENT OF THE ISSUES............................................................................................. 1

SUMMARY OF THE ARGUMENT ...................................................................................... 1

STATEMENT OF ALLEGATIONS IN THE COMPLAINT................................................. 2

    A. Cleveland is a municipal corporation that employs police officers. ............................. 2

    B. Jerry Saunders is killed during a drug deal. ................................................................ 2

    C. The investigation reveals two white men, one Black man, and a black truck. ............ 2

    D. Michaal Buehner is identified by his cousin as the shooter. ........................................ 3

    E. Buehner is indicted by a grand jury, and then convicted. ............................................ 4

    F. Buehner files this lawsuit. ............................................................................................ 5

I. STANDARD OF REVIEW ................................................................................................ 5

II. MOVANTS ARE ENTITLED TO JUDGMENT AS A MATTER OF LAW ON ALL OF PLAINTIFF'S CLAIMS ...................................................................................................... 6

    A. Petkac, Beaman, and Hasan are entitled to judgment as a matter of law on Count One – Suggestive Identification. ........................................................................ 6

        1. The Complaint fails to state a suggestive identification claim. ............................ 6

        2. Alternatively, there is no liability for Petkac, Beaman, or Hasan......................... 12

    B. Movants are entitled to judgment as a matter of law on Count Two—Fabrication--because there are no allegations that the officers knew the information was false provided by the witnesses was false....................................... 14

        Elements of a fabrication of evidence claim. ........................................................... 15

        1. No evidence was "knowingly" fabricated by the officers……………………….15

        2. Alternatively, Petkac, Beaman and Hasan are not liable.     …………………..16

C. Movants are entitled to judgment as a matter of law on Count Three—the alleged *Brady* violation. ........................................................................... 17

    1. The Complaint fails to state a *Brady* claim. ......................................... 17

    2. Plaintiff's Complaint does not plausibly allege that Petkac, Beaman and Hasan withheld reports from the Prosecutor. ......................................... 20

D. Movants are entitled to judgment as a matter of law on County Four—Malicious Prosecution--because there are no allegations regarding what the prosecutor received. ................................................................................. 21

    1. The elements of a federal malicious prosecution claim. ....................... 21

    2. Petkac, Beaman, and Hasan are not otherwise liable for malicious prosecution.. 25

E. Because Petkac cannot be liable for merely supervising, this Court should grant judgment in his favor on Count 10–Supervisory Liability. ............................. 26

    1. There is no liability for Petkac. ........................................................... 26

    2. Alternatively, Petkac has qualified immunity. ...................................... 27

F. The state-law claims fail as a matter of law. ............................................... 27

    1. Petkac, Beaman, and Hasan are entitled to judgment as a matter of law on Plaintiff's reckless breach of duty claim in Count Five. .............................. 27

    2. Movants are entitled to judgment as a matter of law on Count Six--civil liability for criminal acts—because the claim is patently untimely. ....................... 28

    3. Movants are entitled to judgmetn as a matter of law on Count Seven—the state law malicious prosecution claim. ............................................................. 28

    4. Movants are entitled to judgment as a matter of law on Count Eight--abuse of process. ................................................................................................. 29

CERTIFICATE OF SERVICE ................................................................. 30

LOCAL RULE 7.1(f) CERTIFICATION ................................................... 31

# TABLE OF AUTHORITIES

**Cases**

.*Alabsi v. City of Cleveland*, No. 1:20-CV-01933-CEH, 2022 WL 875243, at *4 (N.D.Ohio Mar. 23, 2022) ........................................................... 30

*Alexander v. City of S. Bend,* 433 F.3d 550, 555 (7th Cir. 2006) ................................. 7

*Anderson v. Knox Cnty.*, No. 22-5280, 2023 WL 4536078, at *5 (6th Cir. July 13, 2023) (citation omitted)........................................................... 15

*Ashcroft v. Iqbal*, 556 U.S. 662, 686 (2009) ........................................................... 18

*Barker v. Fleming*, 423 F.3d 1085, 1095 (9th Cir. 2005) ........................................... 19

*Bass v. Robinson,* 167 F.3d 1041, 1048 (6th Cir.1999) .............................................. 16

*Bickerstaff v. Lucarelli*, 830 F.3d 388, 398 (6th Cir. 2016).......................................... 22

*Braziel v. Whitmer*, No. 23-1954, 2024 WL 3966238, at *5 (6th Cir. Aug. 28, 2024) ............... 14

*Briggs v. Hogan*, No. 21-5581, 2022 WL 985825, at *5 (6th Cir. Apr. 1, 2022).......................... 6

*Briscoe v. Cnty. of St. Louis, Missouri*, 690 F.3d 1004, 1012 (8th Cir. 2012)............................ 12

*Broadnax v. Greene Credit Serv.* (2d Dist. 1997), 118 Ohio App.3d 881, 891, 694 N.E.2d 167, 174 ........................................................... 29

*Brown v. City of Detroit*, No. CV 12-13402, 2017 WL 2532964, at *2 (E.D.Mich. Mar. 7, 2017) ........................................................... 7

*Brown v. Davis*, 752 F.2d 1142, 1144 (6th Cir. 1985)................................................... 11

*Brown v. Giles*, 95 F.4th 436, 439 (6th Cir. 2024) ...................................................... 14

*Burton v. St. Louis Bd. of Police Comm'rs*, 731 F.3d 784, 797 (8th Cir. 2013) ........................... 7

*Butcher v. Moore*, No. 23-3744, 2024 WL 4190878, at *3 (6th Cir. Mar. 21, 2024) ( .................. 9

*Christensen v. Wiseman*, No. 1:11 CV 1837, 2011 WL 4376099, at *10 (N.D.Ohio Sept. 2011). ........................................................... 16

*Coleman v. City of Peoria, Illinois*, 925 F.3d 336, 346 (7th Cir. 2019) ..................................... 15

*Cone v. Bell*, 556 U.S. 449, 470 (2009) .................................................................... 11

*Cox v. Oliver* (2d Dist.), 2016-Ohio-4575, ¶15, 66 N.E.3d 1101, 1105 ...................................... 29

*D'Ambrosio v. Marino*, 747 F.3d 378, 390 (6th Cir. 2014)........................................ 20

*Delamota v. City of New York*, 683 F. App'x 65, 67 (2d Cir. 2017) ............................. 9

*Dorcil v. Warden, Attica Corr. Facility*, No. 22-CV-4394, 2023 WL 6796296, at *6.................. 9

*El Mokhamad v. Kelly*, No. 17-12417, 2018 WL 488953, at *3 (E.D.Mich. Jan. 19, 2018)........ 10

*France v. Lucas*, 836 F.3d 612, 625 (6th Cir. 2016)........................................ 21

*Ghougoian v. Monson*, 144 S. Ct. 2659 (2024) ............................................ 15

*Giglio v. United States*, 405 U.S. 150, 153 (1972) ........................................ 17

*Gordon v. Burt*, No. 23-1775, 2024 WL 1842873, at *2 (6th Cir. Apr. 24, 2024).................... 14

*Gray v. Lafler*, No. 2:09-CV-13304, 2012 WL 1033356, at *11 (E.D.Mich. Mar. 27, 2012) ........................................................................ 12

*Gregory v. City of Louisville*, 444 F.3d 725, 747 (6th Cir. 2006)................................ 8

*Grinter v. Knight*, 532 F.3d 567, 575 (6th Cir. 2008) .................................... 16

*Harper v. Bohanan*, No. 3:97-CV-80, 2007 WL 9734415, at *10 (E.D.Tenn. Feb. 8, 2007) ........................................................................ 7

*Heard v. Jackson*, No. 21-CV-09472-JSC, 2022 WL 2356821, at *4 (N.D.Cal. June 30, 2022) ........................................................................ 17

*Hensley v. Carey*, 818 F.2d 646, 648 (7th Cir. 1987) .................................... 7

*Hensley*, at 648-49 ) .................................................................... 7

*Higgason v. Stephens*, 288 F.3d 868, 877 (6th Cir. 2002) ................................ 22

*Holloway v. City of Milwaukee*, 43 F.4th 760, 766 (7th Cir. 2022)........................ 7

*Hutsell v. Sayre*, 5 F.3d 996, 1005 (6th Cir. 1993) ...................................... 7

*Jackson v. Cuyahoga Cnty.*, No. 1:20-CV-02649, 2021 WL 2018853, at *8 (N.D.Ohio May 20, 2021) ...................................................................... 26

*Jalowiec v. Bradshaw*, 657 F.3d 293, 305 (6th Cir. 2011) ................................ 19

*Johnson v. City of Cheyenne*, 99 F.4th 1206, 1219 (10th Cir. 2024)........................ 8

*Johnson v. Daniels*, 769 F. Supp. 230, 234 (E.D.Mich. 1991) ............................ 16

*Johnson v. Moseley*, 790 F.3d 649, 655 (6th Cir. 2015) .................................. 24

*Jones v. City of Elyria, Ohio*, 947 F.3d 905, 918 (6th Cir. 2020)................................. 23

*Jones v. Naert*, 121 F. 4th 558 (6th Cir. 2024)............................................................. 25

*Jones v. Vill. of Highland Hills*, No. 1:20-CV-2475, 2021 WL 5589313, at *1 (N.D.Ohio Nov. 30, 2021), ......................................................................................................... 6

*Kaley v. United States*, 571 U.S. 320, 338 (2014)……………………………………… …..22

*Kirschke v. MacLaren*, No. 18-1606, 2018 WL 6177162, at *3 (6th Cir. Nov. 8, 2018)        16

*Kuhlman v. City of Cleveland*, No. 1:22-CV-00536, 2023 WL 2652171, at *2 (N.D.Ohio Mar. 23, 2023) ...................................................................................................... 6

*Kyles v. Whitley*, 514 U.S. 419, 439 (1995).................................................................. 17

*Lassen v. Lorain Cnty., Ohio*, No. 1:13 CV 1938, 2014 WL 3511010, at *7 (N.D.Ohio July 14, 2014) .............................................................................................................. 27

*Lawler v. Hardeman Cnty., Tennessee*, 93 F.4th 919, 926 (6th Cir. 2024) .................. 14

*Leach v. Shelby Cnty. Sheriff*, 891 F.2d 1241, 1246 (6th Cir. 1989) ........................... 16

*LeFever v. Ferguson*, 645 F. App'x 438, 442 (6th Cir. 2016)...................................... 11

*Legenzoff v. Steckel*, 564 F. App'x 136, 142 (6th Cir. 2014)...................................... 22

*Legenzoff v. Steckel*, No. 2:11-CV-11405, 2013 WL 1278939 (E.D.Mich. 2013)…………. 6, 11

*Lester v. Roberts*, 986 F.3d 599, 608 (6th Cir. 2021) ................................................. 22

*Lynch v. Leis*, 382 F.3d 642, 647 n.5 (6th Cir. 2004)…………………………………….6

*Lyons v. Stovall*, 188 F.3d 327, 332 (6th Cir. 1999)……………………………………… 6

*Mauceri v. Rubinton*, No. 08 CIV. 9035, 2010 WL 286641, at *2 (S.D.N.Y. 2010) ................... 9

*McKinley v. City of Mansfield*, 404 F.3d 418, 444 (6th Cir. 2005)…………………………… 28

*McNeill v. Bagley*, 10 F.4th 588, 599 (6th Cir. 2021).................................................. 18

*Miller v. Gettel*, No. 22-1034, 2023 WL 2945340, at *6 (6th Cir. Apr. 14, 2023)................ 15, 26

*Moldowan v. City of Warren*, 578 F.3d 351, 380 (6th Cir. 2009)................................. 18

*Monson v. City of Detroit, Michigan*, No. 22-2050, 2024 WL 84093........................ 15

*Moore v. City of Cleveland*, 2017-Ohio-1156, 87 N.E.3d 858, ¶26 (8th Dist.)............ 27

*Moore v. City of Lancaster*, No. CV 17-019, 2018 WL 3585134, at *10 (E.D. Pa. July 26, 2018) .................................................................................................. 10

*Morin v. Erway*, No. 12-15406, 2013 WL 1875998, at *8 (E.D.Mich. May 3, 2013) ................ 18

*Niederst v. Minuteman Cap., LLC*, No. 1:23-CV-117, 2024 WL 3522413, at *15 (N.D.Ohio July 24, 2024) ............................................................................... 28

*Novak v. City of Parma, Ohio*, 33 F.4th 296, 307 (6th Cir. 2022), <u>cert. denied,</u> 143 S.Ct. 773, 215 L.Ed.2d 45 (2023) ....................................................................... 28

*Ouza v. City of Dearborn Heights, Michigan*, 969 F.3d 265, 282 (6th Cir. 2020) ...................... 22

*Palivoda v. Felix* (11th Dist.),, 2011-Ohio-5231, ¶37………………………………………… 29

*Peatross v. City of Memphis*, 818 F.3d 233, 241 (6th Cir. 2016) .................................................. 26

*Pollard v. City of Columbus*, 780 F.3d 395, 402 (6th Cir. 2015) ................................................. 12

*Price v. Montgomery Cnty., Kentucky*, 72 F.4th 711, 724 (6th Cir. 2023), *cert. den.* 144 S. Ct. 2499 (2024) ............................................................................................. 24

*Puskas v. Delaware Cnty., Ohio*, 56 F.4th 1088, 2023 WL 107973, *3 (6th Cir. 2023)............. 13

*Ramsey v. Rivard*, No. 20-13124, 2023 WL 6279901, at *15 (E.D.Mich. Sept. 26, 2023) .......... 7

*Reed v. Forshey*, No. 3:15CV00331, 2017 WL 242274, at *13 (N.D.Ohio Jan. 20, 2017) .......... 8

*Richards v. County of Washtenaw*, 818 Fed. Appx. 487, 493-494 (6th Cir. 2020) ...................... 24

*Robb v. Chagrin Lagoons Yacht Club* (1996), 75 Ohio St.3d 264, 270, 662 N.E.2d.................. 29

*Robertson v. Univ. of Akron Sch. of L.*, No. 21-3768, 2022 WL 1836922, at *3 (6th Cir. June 3, 2022)................................................................................................... 13

*Robinson v. Mills*, 592 F.3d 730, 735 (6th Cir. 2010) ................................................................. 18

*Saal v. City of Wooster*, No. 5:18-CV-2744, 2020 WL 2733735, at *1 (N.D.Ohio May 26, 2020) ....................................................................................................... 6

*Salter v. Olsen*, 605 F. Supp. 3d 987, 1004 (E.D.Mich. 2022) .................................................... 17

*Shehee v. Luttrell*, 199 F.3d 295, 300 (6th Cir. 1999) ................................................................. 16

*Showman v. Q Corp. Holdings*, LLC, No. 1:23-CV-00986, 2024 WL 2083518, at *2 (N.D.Ohio May 9, 2024)................................................................................... 5

*Skousen v. Brighton High School*, 305 F.3d 520, 529 (6th Cir. 2002) ................................... 24, 28

*State of Ohio v. Cunningham*, 2025-Ohio-44, ¶91 (8th Dist.) ....................................................... 12

*State v. Johnson*, 2014-Ohio-494, ⁋52 (8th Dist.) ........................................................................... 19

*State v. Jordan*, 2005-Ohio-3790, ⁋14 (10th Dist.) ...................................................................... 19

*State v. Robinson*, 2014-Ohio-1624, ⁋12 (8th Dist.) ..................................................................... 19

*Steiner v. King*, No. 23-1458, 2023 WL 11758789, at *2 (6th Cir. Nov. 20, 2023) .................... 10

*Strickler v. Greene*, 527 U.S. 263, 281-82 (1999) ....................................................................... 17

*Tanner v. Walters*, 98 F.4th 726, 734 (6th Cir. 2024) .................................................................. 23

*Tate v. Bauman, No. 5:13-CV-11118, 2015 WL 4389637, at *5 (E.D.Mich. July 15, 2015* ........ 11

*Taylor v. Davidson Cnty. Sheriff's Dep't*, 832 F. App'x 956, 960 (6th Cir. 2020) ...................... 12

*United States v. Harris*, 281 F.3d 667, 670 (7th Cir. 2002), *as amended* (Mar. 21, 2002) ........... 8

*United States v. Peterson*, 411 F. App'x 857, 865 (6th Cir. 2011) ................................................ 9

*United States v. Wahib,* 578 F.Supp.3d 951, 955 (N.D.Ohio 2022) ............................................ 22

*United States v. Watson*, 540 F. App'x 512, 516 (6th Cir. 2013) .................................................. 8

*Virgil v. City of Newport*, No. CV 16-224-DLB-CJS, 2018 WL 344986, at *11 (E.D.Ky.
   Jan. 9, 2018), *aff'd*, 745 F. App'x 618 (6th Cir. 2018) ............................................................ 15

*Walden v. City of Chicago*, 755 F. Supp. 2d 942, 965 (N.D.Ill. 2010) ........................................ 7

*Williams v. Carroll*, No. 08 C 4169, 2009 WL 383623, at *3 (N.D. Ill. Feb. 17, 2009) .............. 17

*Williams v. City of Chattanooga, Tennessee*, 772 F. App'x 277, 280 (6th Cir. 2019) .................. 12

*Williams v. Lavigne*, 209 F. App'x 506, 508 (6th Cir. 2006) ........................................................ 8

*Williams v. Maurer*, 9 F.4th 416, 430 (6th Cir. 2021) .................................................................. 14

*Williams v. Schismenos*, 258 F. Supp.3d 842, 860 (N.D.Ohio 2017), aff'd, 738 F. App'x
   342 (6th Cir. 2018) .................................................................................................................... 22

*Wray v. City of New York*, 490 F.3d 189, 193 (2d Cir. 2007) ........................................................ 7

*Yaklevich v. Kemp, Schaeffer & Rowe* (1994), 68 Ohio St.3d 294, 298, 626 N.E.2d 115 .......... 29

*Young v. City of Muskegon Heights*, No. 1:23-CV-460, 2024 WL 3439671, at *6
   (W.D.Mich. July 17, 2024) ....................................................................................................... 25

*Young v. Owens*, 577 F. App'x 410, 417 (6th Cir. 2014) ............................................................. 28

## STATEMENT OF THE ISSUES

1. When there are no plausible allegations other than a witness was shown a photo array and then a lineup, does the Complaint fail to state a viable claim?

2. When there are no plausible allegations about what the officers knew, does the Complaint fail to state a viable claim?

3. When there are no plausible allegations about what the prosecutor received, does the Complaint fail to state a claim?

4. When there are no plausible allegations regarding active participation/involvement versus merely supervising, does the Complaint fail to state a claim?

5. Are the individual police officers entitled to qualified immunity?

## SUMMARY OF THE ARGUMENT

Three men drove into Cleveland's Kinsman neighborhood looking for drugs. They found two dealers. But the deal went bad. One was killed and the other, Lawone Edwards, ran for his life. Cleveland officers investigated. They found Mr. Edwards, who after a photo array and lineup, identified Michael Buehner as the shooter. They also found Randy Price, Buehner's cousin. Price confessed that he drove the truck and Buehner pulled the trigger. Both testified at trial. Buehner was convicted. But Buehner later secured a new trial and was released.

Buehner now alleges that his rights were violated. But after wading through the legal conclusions, there are no claims here. Buehner alleges, for example, that Mr. Edwards improperly identified him. Yet it is constitutional to use a photo array and then a lineup. And it overstates the importance of Mr. Edwards at trial—Buehner's cousin testified that he sat next to him as Buehner fired the gun. So there was more than enough to convict without Mr. Edwards's testimony. Buehner's other counts follow a similar path. In this case, there is no constitutional violation. In the alternative, the officers have qualified immunity. For these reasons set forth herein, this Court should grant judgment to Joseph Petkac, Michael Beaman, and Sahir Hasan.

<u>**STATEMENT OF ALLEGATIONS IN THE COMPLAINT**</u>

**A. Cleveland is a municipal corporation that employs police officers.**

The City of Cleveland is a municipal corporation, which carries out police powers, such as hiring and deploying safety forces. (Compl., ¶6). During the relevant time, this included officers Michael Beaman and Sahir Hasan. (*Id.*, ¶5). Beaman and Hasan investigated suspected homicides. (*See id.*). CDP Lt. Joseph Petkac did not investigate suspected homicides, but rather, he reviewed and approved the reports of others, including Beaman and Hasan. (*Id.*, ¶¶ 24, 208–210).

**B. Jerry Saunders is killed during a drug deal.**

During the night of May 23, 2001, two young men were dealing drugs in the Kinsman neighborhood: Jerry Saunders and Lawone Edwards. (*Id.*, ¶11). Mr. Saunders and Mr. Edwards saw a black pickup truck slow down and then turn onto their street. (*Id.*). They wanted to make a sale. (*Id.*). So when the truck dove by, they jumped into the open truck bed. (*Id.*).

There were three people in the truck cab. (*Id.*, ¶¶ 19, 25, 28). One person in the truck discharged a firearm. (*Id.*, ¶ 11). Mr. Edwards ran away. (*Id.*). Mr. Saunders, however, was wounded. (*Id.*, ¶ 27). At least one person nearby tried to administer CPR. (*Id.*, ¶18). However, Mr. Saunders passed away not long after his injury. (*Id.*, ¶27).

**C. The investigation reveals two white men, one Black man, and a black truck.**

Sahir Hasan responded to the scene. (*Id.*, ¶13). He and other unknown officers looked for evidence. (*Id.*, ¶15). These officers took photos and collected or documented other evidence, such as a bullet casing and pellets, the victim's body and clothes, and a jacket, later identified as owned by Mr. Edwards. (*Id.*, ¶20). Neither the truck nor its occupants were at the scene. Unknown officers also took witness statements. (*Id.*, ¶19). There are no allegations about what

additional evidence should have been gathered that night or what it would have revealed. (*Id.*, ¶15).

Shortly after the shooting, Mr. Edwards told the victim's sister there were two white men and one Black man in small black truck. (*Id.*, ¶25). This was reported to Officer Hasan. (*Id.*). Mr. Edwards then spoke directly with Officers Hasan and Beaman. (*Id.*, ¶30). He confirmed that the incident involved two white men, a Black man, and a small black truck. (*Id.*, ¶30). Three other witnesses also told Officer Hasan that there were two white men, one Black man, and a small black truck. (*Id.*, ¶28). A fifth witness, Tierra Edwards, provided a corroborating statement. (*Id.*, ¶19) (one white man, one Black man, and one unknown).

Contrary to these five witnesses, including Mr. Edwards' point-blank observation, two witnesses varied on the races of those in the truck. (*Id.*, ¶¶ 19, 43). Thus, the majority of the witnesses, including one with the best view, concluded that the shooting involved two white men, one Black man, and a small black truck.

**D. Michaal Buehner is identified by his cousin as the shooter.**

Officers Hasan and Beaman started the investigation by trying to track down the black truck. (*Id.*, ¶¶ 36–39). But then a confidential informant identified Michael Buehner and his cousin, Randy Price, as potential suspects. (*Id.*, ¶40). Both are white men. (*Id.*, ¶51). Buehner also had access to a black truck, even if not made by GMC or Ford, the brands identified by the witnesses. (*Id.*, ¶46). But Buehner and Price denied involvement. (*Id.*, ¶44). Mr. Edwards was shown a photo array that included Buehner, but did not make an identification. (*Id.*, ¶41).

Mr. Edwards was then brought back into the police station. (*Id.*, ¶48). He was shown a physical lineup that included Buehner. (*Id.*). Mr. Edwards identified Buehner from this physical lineup. (*Id.*). Buehner was the only person who appeared in the photo array and the lineup. No two people are the same, so Buehner was different in height and age than the other men in the

lineup. (*Id.*). There are no specific allegations about how these other people differed from Buehner. (*Id.*). While Mr. Edwards was positive that he identified Buehner, he was not "truly" positive. (*Id.*). There are no allegations that Mr. Edwards communicated any such reservations. There are also no allegations how or in what manner Mr. Edwards may have been "coerced" into making this identification. (*Id.*).

Mr. Edwards also viewed an in-person lineup that included Price. (*Id.*, ¶50). Edwards identified Price as one of the white men in the pickup truck. (*Id.*). Price was "totally different" from those next to him in the lineup, but there are no allegations about any of these differences. (*Id.*).

Price confessed to being one of the white men in the truck. (*Id.*, ¶49). Price then identified his cousin, Buehner, as the second white man in the truck—and the shooter. (*Id.*). Price was offered a plea deal for testifying at trial. (*Id.*). The Complaint alleges Price was lying when he placed himself at the crime scene and identified his cousin. (*Id.*). But there are no allegations that he told the officers so. (*Id.*). At the time, Price had been charged with murder and had a previous conviction. (*Id.*).

**E. Buehner is indicted by a grand jury, and then convicted.**

Some unspecified "Officer Defendants" allegedly failed to provide unidentified exculpatory evidence to the Cuyahoga County Prosecutor's Office ("CCPO"). (*Id.*, ¶55). Whoever conducted this transfer failed to provide unalleged information about the lineups, a recorded interview (the content of which is not alleged), and three statements recorded and maintained by the Division of Police ("CDP") that referred to alternate suspects, *i.e.*, non-white truck occupants. (*Id.*). Unidentified "Officer Defendants" also failed to provide alternate suspects and destroyed unalleged evidence. (*Id.*).

The Complaint also alleges alternate facts. (*See* Compl., ¶56). Under these alternate facts, the CCPO had access to some unspecified evidence and failed to provide that evidence to Buehner's defense counsel. (*Id.*, ¶56). Prosecutors also failed to provide the names of unidentified City employees. (*Id.*, ¶57). Prosecutors then lost or destroyed unalleged evidence. (*Id.*, ¶58). Prosecutors then engaged in other unalleged misconduct. (*Id.*, ¶63).

Either way, Buehner was indicted by a grand jury.[1] He was then then convicted of murder. (*Id.*, ¶66). Price and Mr. Edwards testified at the trial. (*Id.*, ¶67).

### F. Buehner files this lawsuit.

Following Buehner's conviction, Mr. Edwards and Price provided affidavits that contradicted and recanted unalleged portions of their trial testimony. (*Id.*, ¶73). Buehner would later be acquitted. He then filed this lawsuit against Hasan, Beaman, Petkac, the City of Cleveland, two Cuyahoga County prosecutors, and Cuyahoga County. (*See* Compl.). Petkac, Beaman, and Hasan answered the Complaint and now move for judgment on the pleadings.

## LAW AND ARGUMENT

### I. STANDARD OF REVIEW

Under Federal Rule of Civil Procedure 12(c), after the pleadings are closed, a party may move for judgment on the pleadings. *Showman v. Q Corp. Holdings*, LLC, No. 1:23-CV-00986, 2024 WL 2083518, at *2 (N.D.Ohio May 9, 2024)(Barker, J.). The same standard for deciding a Rule 12(b)(6) motion to dismiss for failure to state a claim applies to a Rule 12(c) motion for judgment on the pleadings. *Id.* (citation omitted). A complaint must contain "(1) enough facts to state a claim to relief that is plausible, (2) more than a formulaic recitation of a cause of action's elements, and (3) allegations that suggest a right to relief above a speculative level." *Kuhlman v.*

---

[1]     *See* State of Ohio v. Michael Buehner, CR-02-417994, January 11, 2022.

*City of Cleveland*, No. 1:22-CV-00536, 2023 WL 2652171, at *2 (N.D.Ohio Mar. 23, 2023) (Barker, J.)(quoting *Tackett v. M & G Polymers*, USA, LLC, 561 F.3d 478, 488 (6th Cir. 2009)).

Federal courts routinely take judicial notice of state court online dockets. *Saal v. City of Wooster*, No. 5:18-CV-2744, 2020 WL 2733735, at *1 (N.D.Ohio May 26, 2020), *citing Lynch v. Leis*, 382 F.3d 642, 647, n.5 (6th Cir. 2004)(courts may take judicial notice of court records available online to members of the public); *Lyons v. Stovall*, 188 F.3d 327, 332 (6th Cir. 1999) ("[F]ederal courts may take judicial notice of proceedings in other courts of record."). When a ruling on a Rule 12(c) motion, a court may occasionally consider things outside of the pleadings. *Id.* (citations omitted). That includes when an individual is indicted by a grand jury. *Briggs v. Hogan*, No. 21-5581, 2022 WL 985825, at *5 (6th Cir. Apr. 1, 2022)(considering indictment under Rule 12); *DiPasquale v. Hawkins*, 748 F. App'x 688, 694 (6th Cir. 2018)(same).

## II.   MOVANTS ARE ENTITLED TO JUDGMENT AS A MATTER OF LAW ON ALL OF PLAINTIFF'S CLAIMS

The Complaint fails to plausibly allege a constitutional violation. Alternatively, Petkac, Beaman, and Hasan have qualified immunity. Either way, this Court should grant judgment to each of them.

### A.   Petkac, Beaman, and Hasan are entitled to judgment as a matter of law on Count One – Suggestive Identification.

Because a lineup may follow up a photo array, among other reasons, there was no constitutional violation and this Court should grant judgment to Petkac, Beaman and Hassan. Alternatively, these individuals are not liable.

#### 1.   The Complaint fails to state a suggestive identification claim.

An unduly suggestive identification of a criminal suspect is not, in and of itself, a constitutional violation actionable under Section 1983. *Legenzoff v. Steckel*, No. 2:11-CV-11405, 2013 WL 1278939 (E.D.Mich. Mar. 27, 2013); *Walden v. City of Chicago*, 755 F. Supp. 2d 942,

965 (N.D.Ill. 2010), citing *Hensley v. Carey*, 818 F.2d 646, 648 (7th Cir. 1987); *Burton v. St. Louis Bd. of Police Comm'rs*, 731 F.3d 784, 797 (8th Cir. 2013); *Holloway v. City of Milwaukee*, 43 F.4th 760, 766 (7th Cir. 2022), cert. denied sub nom. *Holloway v. City of Milwaukee, Wisconsin*, 143 S.Ct. 1083, 215 L.Ed.2d 396 (2023); *Wray v. City of New York*, 490 F.3d 189, 193 (2d Cir. 2007)("[W]e have not held that a suggestive identification alone is a constitutional violation; rather, the constitutional violation is that [the plaintiff's] right to a fair trial was impaired by the admission of testimony regarding the unreliable identification[.]"); *Alexander v. City of S. Bend,* 433 F.3d 550, 555 (7th Cir. 2006)("[The] rule regarding unduly suggestive identification procedures 'is a prophylactic rule designed to protect a core right, that is the right to a fair trial, and it is only the violation of that core right and not the prophylactic rule that should be actionable under § 1983.'" (*quoting Hensley*, at 648-49 ); *Pace v. City of Des Moines*, 201 F.3d 1050, 1055 (8th Cir. 2000).[2]

"[B]ased on the Sixth Circuit's decision in [*Hutsell v. Sayre*, 5 F.3d 996, 1005 (6th Cir. 1993)], this Court concludes that even if the photographic lineups were unnecessarily suggestive, the flawed lineups do not violate a constitutionally protected interest sufficient to merit damages under Section 1983." *Harper v. Bohanan*, No. 3:97-CV-80, 2007 WL 9734415, at *10 (E.D.Tenn. Feb. 8, 2007); *Brown v. City of Detroit*, No. CV 12-13402, 2017 WL 2532964, at *2 (E.D.Mich. Mar. 7, 2017), report and recommendation adopted, No. 12-13402, 2017 WL 2500995 (E.D.Mich. June 9, 2017); *Ramsey v. Rivard*, No. 20-13124, 2023 WL 6279901, at *15 (E.D.Mich. Sept. 26, 2023).

---

[2]     The conclusion reached by these cases is reinforced by the Supreme Court's decision in *Vega v. Tekoh*, 597 U.S. 134, 142 S.Ct. 2095, 213 L.Ed.2d 479 (2022). The question presented in *Tekoh* was "whether a violation of the *Miranda* rules provides a basis for a claim under § 1983." *Id.* at 2101.  The Supreme Court held that it does not. *Id.* It reasoned that the right conferred by *Miranda* is only a prophylactic trial right, not a free-standing constitutional right; defendants may thus seek to suppress evidence obtained in violation of their *Miranda* rights at their criminal trials, but they may not sue officials under section 1983 for that violation. *See id.*

As a result, a complaint must allege the following elements: (1) the identification procedure was unduly suggestive; (2) it was unreliable under the *Biggers* factors; and (3) that eyewitness misidentification results in a criminal defendant not having a fair trial. *Gregory v. City of Louisville*, 444 F.3d 725, 747 (6th Cir. 2006); *Johnson v. City of Cheyenne*, 99 F.4th 1206, 1219 (10th Cir. 2024)("[T]he salient constitutional concern is whether an eyewitness misidentification results in a criminal defendant not having a fair trial.").[3] Because the Complaint cannot show all three elements, this Court should grant judgement in their favor.

### a) Buehner appeared in a photo array and then a lineup.

It is well-established that the same suspect may appear in multiple arrays, even if he is the only person to do so. *Williams v. Lavigne*, 209 F. App'x 506, 508 (6th Cir. 2006). In *Williams*, for example, the Sixth Circuit rejected the argument that the same suspect appearing in multiple arrays is unduly suggestive. *Id.*; *United States v. Watson*, 540 F. App'x 512, 516 (6th Cir. 2013) (holding same); *Reed v. Forshey*, No. 3:15CV00331, 2017 WL 242274, at *13 (N.D.Ohio Jan. 20, 2017) (holding same). There are even greater protections when there are changes in the identification procedure, which is why there is "nothing per se impermissible" about "placing the same suspect in two different identification procedures." *United States v. Harris*, 281 F.3d 667, 670 (7th Cir. 2002), *as amended* (Mar. 21, 2002) (citation omitted). This would include a photo array and then a lineup. *Id.*

Here, this Court should grant judgment to Petkac, Beaman, and Hasan because it was not unduly suggestive for Buehner to appear in a photo array and then a physical lineup. Beaman and Hasan brought in Mr. Edwards. (Compl., ¶41). They showed him a photo array containing

---

[3]     "[E]ach case must be considered on its own facts, and that convictions based on eyewitness identification at trial following a pretrial identification by photograph will be set aside on that ground only if the photographic identification procedure was so impermissibly suggestive as to give rise to a very substantial likelihood of irreparable misidentification." <u>Simmons v. United States</u>, 390 U.S. 377, 384, 88 S. Ct. 967, 971, 19 L. Ed. 2d 1247 (1968)

Buehner. (*Id.*). Mr. Edwards did not identify the shooter from the photo array. (*Id.*). A few months later, Mr. Edwards saw a physical lineup that contained Buehner. (*Id.*, ¶48). From this lineup, Mr. Edwards identified the shooter as Buehner. (*Id.*). Buehner was the only person to appear in the photo array and the lineup several months later. (*See id.*). Because it is lawful for the same person to appear in a photo array and then a lineup, this Court should grant judgment to Petkac, Beaman, and Hasan.

### b) There are no other plausible allegations about the identifications.

Buehner first alleges that none of the other men "looked like [him]" and the other men were "different heights and ages." (*Id.*, ¶ 48). But these allegations fail under *Iqbal*. *See, e.g.*, *Delamota v. City of New York*, 683 F. App'x 65, 67 (2d Cir. 2017) (dismissing suggestive identification claim under Rule 12). No one looks exactly like Buehner. So the Complaint must allege—and this Court must determine—the specific differences to consider the claim. *See, e.g.*, *Butcher v. Moore*, No. 23-3744, 2024 WL 4190878, at *3 (6th Cir. Mar. 21, 2024) (not unduly suggestive when one person had face tattoo); *United States v. Peterson*, 411 F. App'x 857, 865 (6th Cir. 2011)(difference in clothing not unduly suggestive); *Dorcil v. Warden, Attica Corr. Facility*, No. 22-CV-4394, 2023 WL 6796296, at *6 (E.D.N.Y. Oct. 13, 2023)("[T]here is no requirement that individuals depicted in identification procedures be close in age."). By saying only that the individuals next to Buehner were different in height and age—as many people are—Buehner failed to plausibly plead any unduly suggestive arrays or lineups.

Buehner next alleges "coercion" or "threats" during the identification process, but these allegations are similarly conclusory. (Compl., ¶49). Courts refuse to fill in facts for terms like "coercion." *See, e.g.*, *Mauceri v. Rubinton*, No. 08 CIV. 9035 (LAP), 2010 WL 286641, at *2 (S.D.N.Y. Jan. 15, 2010) (The complaint "contains no factual detail about what Rubinton purportedly did to coerce such behavior. Thus, it is not entitled to the assumption of truth.")

(citing *Iqbal*, 127 S.Ct. at 1950); *El Mokhamad v. Kelly*, No. 17-12417, 2018 WL 488953, at *3 (E.D.Mich. Jan. 19, 2018) (holding same). Thus, this legal conclusion is not plausibly pleaded and should be ignored.

Buehner finally alleges that there was "coaching" during the identification. (Compl., ¶49). To "coach" is to instruct and the Sixth Circuit allows coaching and instruction in photo arrays and lineups. *United States v. Watson*, 540 F. App'x 512, 516 (6th Cir. 2013). A detective, for example, may "read a set instructions" about the array, including that the array "may or may not contain a picture of the person" who committed the crime. *Id.* Thus, the Complaint was required to allege exactly what type of "coaching" was provided to pass *Iqbal*'s plausibility requirement. It does not. So this allegation is legally insufficient.

Because there is no problem with the same suspect's appearance in a photo array and then a lineup, and the Complaint's other allegations are not plausibly pleaded, this Court should grant judgment to Petkac, Beaman, and Hasan on Count One.

### c) Even if suggestive, the identification was reliable under *Biggers*.

Even if the identification process was unduly suggestive, the Complaint must still allege that it was unreliable. Reliability is determined by five factors, known as the *Biggers* factors:

> (1) the witness's opportunity to view the defendant at the time of the crime, (2) the witness's degree of attention, (3) the accuracy of the witness's prior description, (4) the witness's level of certainty, and (5) the length of time between the crime and the identification.

*Steiner v. King*, No. 23-1458, 2023 WL 11758789, at *2 (6th Cir. Nov. 20, 2023)(citation omitted); *see also Moore v. City of Lancaster*, No. CV 17-019, 2018 WL 3585134, at *10 (E.D. Pa. July 26, 2018) (applying *Biggers* under Rule 12).

Because the Complaint fails to allege that the identification was unreliable, this Court should grant judgment to Petkac, Beaman, and Hasan. The Complaint alleges that Mr. Edwards

jumped into an open truck bed with the shooter in the cab. (Compl., ¶ 25). This provided Mr. Edwards an opportunity to see the shooter through the window and to do so within a few feet. (*See id.*). Mr. Edwards identified the races of the occupants and who fired the gun. (*Id.*, ¶ 30). He even saw the brand marking on the truck. (*Id.*). These allegations show that Mr. Edwards was paying attention under *Biggers*. The remaining factors, such as the degree of certainty and the prior descriptions of the individuals, are not plausibly alleged. Thus, even if the identification process was unduly suggestive, the Complaint still fails to allege that the identification was unreliable under *Biggers*. Because the Complaint fails to allege that the identification was unreliable as required by *Biggers*, this Court should grant judgment to Petkac, Beaman, and Hasan.

### d) Because Buehner was identified by his cousin, there was no impact on the trial's outcome.

Even if unduly suggestive and unreliable, a complaint must still allege that the identification changed the outcome of the trial. As a Due Process claim, a complaint must address whether the criminal defendant had a "fair trial." *Johnson v. City of Cheyenne*, 99 F.4th 1206, 1219 (10th Cir. 2024)(citation omitted). In other words, is there a "reasonable probability" that, had identification been lawful, would the "result of the proceeding … have been different." *LeFever v. Ferguson*, 645 F. App'x 438, 442 (6th Cir. 2016)(quoting *Cone v. Bell*, 556 U.S. 449, 470 (2009)). The "testimony of a single, uncorroborated prosecuting witness or other eyewitness is generally sufficient to support a conviction." *Tate v. Bauman*, No. 5:13-CV-11118, 2015 WL 4389637, at *5 (E.D.Mich. July 15, 2015)(*quoting Brown v. Davis*, 752 F.2d 1142, 1144 (6th Cir. 1985)).

Price was Buehner's cousin. (Compl., ¶49). He testified that he drove the small black truck while Buehner sat next to him. (*Id.*, ¶51). Sitting on the truck bench, they watched Mr.

Edwards and Mr. Saunders jump into the back of the truck. (*Id.*, ¶11). Price then saw Buehner shoot Mr. Saunders. (*Id.*).  This is more than enough evidence for a conviction.  "[A] conviction may rest solely on the testimony of a single witness."  <u>State of Ohio v. Cunningham</u>, 2025-Ohio-44, ¶91 (8th Dist.); <u>Gray v. Lafler</u>, No. 2:09-CV-13304, 2012 WL 1033356, at *11 (E.D.Mich. Mar. 27, 2012)("While that evidence amounted to one eyewitness's identification testimony, there is certainly no rule of law holding that a single witness's identification testimony is insufficient to support a conviction.").

Price's testimony was also supported by three eyewitnesses who saw two white men driving a black truck. (*Id.*, ¶28). Mr. Edwards' testimony was not needed convict Buehner. Because Price testified against Buehner, even if Mr. Edwards' identification was flawed, it did not impact the outcome of the trial,.

### 2.  Alternatively, there is no liability for Petkac, Beaman, or Hasan.

 "[E]ach defendant's liability must be assessed individually based on his own actions." <u>*Williams v. City of Chattanooga, Tennessee*</u>, 772 F. App'x 277, 280 (6th Cir. 2019).  Because the Complaint fails to allege a constitutional violation on an officer-by-officer basis, this Court should grant judgment to Movants. *Taylor v. Davidson Cnty. Sheriff's Dep't*, 832 F. App'x 956, 960 (6th Cir. 2020)(*quoting Pollard v. City of Columbus*, 780 F.3d 395, 402 (6th Cir. 2015)).

### a)  There is no liability for Petkac.

The Complaint fails to allege that Petkac was involved in creating or administering any of the photo arrays or lineups. As a result, this Court should grant him judgment on Count One. *See Taylor*, 832 F. App'x at 960; *Briscoe v. Cnty. of St. Louis, Missouri*, 690 F.3d 1004, 1012 (8th Cir. 2012)(no liability for officer who did not create photo array). Furthermore, Petkac is entitled to qualified immunity because it was not clearly established in 2001 that a police supervisor who wasn't actively participating in a photo array or lineup could violate a constitutional right.

### b) Beaman and Hasan cannot be liable.

This Court should grant judgment to Beaman and Hasan because the Complaint uses group pleading. "Group pleading" is where a plaintiff uses generic references to defendants where it is insufficient to establish that any one of the defendants acted in an unconstitutional manner. *Robertson v. Univ. of Akron Sch. of L.*, No. 21-3768, 2022 WL 1836922, at *3 (6th Cir. June 3, 2022)(conclusory allegations that "defendants" violated a constitutional right are "insufficient").

Here, the Complaint uses group pleading so this Court should grant judgment to Beaman and Hasan. The Complaint alleges that the "Officer Defendants" coerced an identification from Mr. Edwards (Compl., ¶48) and also coerced a statement from Price. (*Id.*, ¶49). This is classic group pleading that fails to create liability. Then the Complaint alleges that "Hasan and Beaman" each brought in Mr. Edwards and Mr. Price (*id.*, ¶48), each showed Buehner in a lineup (*id.*), each charged Price with murder (*id.*, ¶49), each played a tape (*id.*), each promised a plea deal (*id.*), and each "made it clear" who Mr. Edwards should select. (*Id.*, ¶50). Because only one person can do these things (show a lineup, play a tape, etc.), these allegations are also group pleading contrary to *Iqbal*. Because the Complaint fails to allege specific individual and independent actions by Beaman and Hasan, this Court should grant judgment in their favor.

### c) Beaman and Hasan are entitled to qualified immunity.

The doctrine of qualified immunity shields "government officials performing discretionary functions" from liability "insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Puskas v. Delaware Cnty., Ohio*, 56 F.4th 1088, 2023 WL 107973, *3 (6th Cir. 2023). Thus, a defendant is entitled to qualified immunity unless the facts, when viewed in the light most favorable to the plaintiff, would permit a reasonable juror to find that: (1) the defendant violated

a constitutional right; and (2) the right was clearly established." _Puskas_, _id_., citing _Williams v. Maurer_, 9 F.4th 416, 430 (6th Cir. 2021). In determining the "clearly established prong" of the two-part qualified immunity test, the Sixth Circuit recently reminded that "officers will obviously lack notice of future rules that a court has yet to adopt. So courts evaluating a qualified-immunity defense may consider only the legal rules existing when `the challenged conduct' occurred, not legal rules adopted by later caselaw." _Lawler as next friend of Lawler v. Hardeman Cnty., Tennessee_, 93 F.4th 919, 926 (6th Cir. 2024). That would be the year 2001.

Unless a plaintiff's claim states a violation of "clearly established" law at the time of the incident, officers receive qualified immunity. _Gordon v. Burt_, No. 23-1775, 2024 WL 1842873, at *2 (6th Cir. Apr. 24, 2024). A plaintiff "must produce an on-point, binding case" that shows that the right at issue was clearly established. _Id._ (_quoting Brown v. Giles_, 95 F.4th 436, 439 (6th Cir. 2024)). Early resolution of a qualified immunity claim ensures that qualified immunity serves its purpose: defense against having to litigate a suit at all. _Braziel v. Whitmer_, No. 23-1954, 2024 WL 3966238, at *5 (6th Cir. Aug. 28, 2024).

Here, this Court should find that Beaman and Hasan are entitled to qualified immunity. The Complaint must allege that these officers violated a constitutional right that was clearly established in 2001, when the events took place. (_See_ Compl.). It was not clearly established in 2001 (or even now), that it was improper for an individual to appear in a photo array and then a lineup. No other facts are plausibly alleged. Therefore, this Court should grant qualified immunity to officers Beaman and Hasan.

**B. Movants are entitled to judgment as a matter of law on Count Two—Fabrication--because there are no allegations that the officers knew the information was false provided by the witnesses was false.**

Because there are no allegations that the officers knew Price and Mr. Edwards were allegedly lying about Buehner, the Court should grant them judgment as a matter of law. Alternatively, Petkac, Beaman, and Hasan are not liable.

**Elements of a fabrication of evidence claim.**

A fabrication of evidence claim has two elements: (1) an officer "knowingly" fabricates evidence; and (2) a reasonable likelihood exists that the false evidence would have affected the jury's decision. *Monson v. City of Detroit, Michigan*, No. 22-2050, 2024 WL 84093, at *6 (6th Cir. Jan. 8, 2024), *cert. denied sub nom. Ghougoian v. Monson*, 144 S. Ct. 2659 (2024); *Virgil v. City of Newport*, No. CV 16-224-DLB-CJS, 2018 WL 344986, at *11 (E.D.Ky. Jan. 9, 2018), *aff'd*, 745 F. App'x 618 (6th Cir. 2018)(rejecting fabrication of evidence claim under Rule 12).

**1.      No evidence was "knowingly" fabricated by the officers.**

To establish that evidence was "knowingly" fabricated, it is not enough to allege that an "officer is mistaken or negligent in determining witness credibility." *Anderson v. Knox Cnty.*, No. 22-5280, 2023 WL 4536078, at *5 (6th Cir. July 13, 2023) (citation omitted). After all, an officer may rely on eyewitnesses, and firsthand observations carry a presumption of reliability. *Id.* (citation omitted). Instead, a complaint must allege that the testimony is "invariably false" because it is "made up by the officer, who knows he is making it up." *Coleman v. City of Peoria, Illinois*, 925 F.3d 336, 346 (7th Cir. 2019); *Miller v. Gettel*, No. 22-1034, 2023 WL 2945340, at *6 (6th Cir. Apr. 14, 2023) (no liability because evidence was not known to be false). Any lower standard would expose an officer to liability "any time a suspect provided conflicting stories." *Anderson*, 2023 WL 4536078, at *6.

Here, there are no allegations that evidence was known to be false. The Complaint concludes that the identifications of Buehner and Price were fabricated. (Compl., ¶51). But there are no allegations that these identifications were known to be false by the officers. Mr. Edwards

identified Buehner from the lineup. (Compl., ¶48). And while he was not "truly" positive (*id.*), there are no allegations he withdrew his identification. (*Id.*). Similarly, even if Price fabricated his confession to implicate himself and his cousin (Plaintiff Buehner), there are no allegations that the officers knew Price's confession was false. (*Id.*, ¶ 50). Because there are no factual allegations supporting a conclusion that officers knowingly fabricated evidence, this Court should grant judgment to Defendants.

## 2. Alternatively, Petkac, Beaman and Hasan are not liable.

### a) Petkac is not liable.

"[M]unicipal Officers cannot be held liable for the actions of their employees under a theory of *respondeat superior.*" <u>Christensen v. Wiseman</u>, No. 1:11 CV 1837, 2011 WL 4376099, at *10 (N.D.Ohio Sept. 2011). "Personal participation is a *sine qua non* of individual capacity suits." <u>Johnson v. Daniels</u>, 769 F. Supp. 230, 234 (E.D.Mich. 1991), *aff'd*, 70 F.3d 1272 (6th Cir. 1995). To hold a supervisor liable, the plaintiff must show that the defendant was personally responsible for or actively participated in the unconstitutional activity. <u>Kirschke v. MacLaren</u>, <u>No. 18-1606, 2018 WL 6177162, at *3 (6th Cir. Nov. 8, 2018)</u>, *citing* <u>Grinter v. Knight</u>, 532 F.3d 567, 575 (6th Cir. 2008). A plaintiff "must allege that they did more than play a passive role in the alleged violations or show mere tacit approval of the actions of their subordinates." <u>Christensen,</u> 2011 WL 4376099, at *10; The Sixth Circuit has rejected liability for "failure to remedy" unconstitutional behavior, stating that liability "must be based on active unconstitutional behavior and cannot be based upon a mere failure to act." <u>Shehee v. Luttrell,</u> <u>199 F.3d 295, 300 (6th Cir. 1999)</u>; <u>Bass v. Robinson,</u> 167 F.3d 1041, 1048 (6th Cir.1999); <u>Leach</u> <u>v. Shelby Cnty. Sheriff,</u> 891 F.2d 1241, 1246 (6th Cir. 1989).

This Court should grant judgment to Petkac because there are no allegations that he was involved in the interviews of Mr. Edwards or Price. *See, e.g.*, *Miller v. Gettel*, No. 22-1034, 2023

WL 2945340, at *6 (6th Cir. Apr. 14, 2023). Or, at the very least, it was not clearly established in 2001 that a supervising officer could violate an individual's constitutional rights by not participating in an interview. Either way, this Court should grant him qualified immunity.

### b) Beaman and Hasan are not liable.

Beaman and Hasan have qualified immunity. Buehner can point to no cases on point that demonstrate it was clearly established in 2001 for an officer to rely on eyewitness testimony (such as by Price and Edwards), when the witnesses fail to communicate that their testimony is false. *See, e.g.*, *Giglio v. United States*, 405 U.S. 150, 153 (1972) (requiring "known false" evidence).

## C. Movants are entitled to judgment as a matter of law on Count Three—the alleged *Brady* violation.

### 1. The Complaint fails to state a *Brady* claim.

There are three elements to a *Brady* claim: (1) "the evidence at issue must be favorable to the accused, either because it is exculpatory, or because it is impeaching"; (2) "that evidence must have been suppressed by the State, either willfully or inadvertently"; and (3) "prejudice must have ensued." *Salter v. Olsen*, 605 F. Supp.3d 987, 1004 (E.D.Mich. 2022) (quoting *Strickler v. Greene*, 527 U.S. 263, 281-82 (1999)). Courts may dismiss a complaint that fails to state a *Brady* claim. *Heard v. Jackson*, No. 21-CV-09472-JSC, 2022 WL 2356821, at *4 (N.D.Cal. June 30, 2022); *Williams v. Carroll*, No. 08 C 4169, 2009 WL 383623, at *3 (N.D. Ill. Feb. 17, 2009). Because the Complaint fails to allege each of the three elements, this Court should grant judgment to Petkac, Beaman, and Hasan.

### a) No reports are favorable to Buehner.

Whether evidence is "favorable" turns on the context of the existing or potential evidentiary record. *Kyles v. Whitley*, 514 U.S. 419, 439 (1995). It includes exculpatory or

impeachment evidence. *LeFever v. Ferguson*, 645 F. App'x 438, 442 (6th Cir. 2016)(citing *Robinson v. Mills*, 592 F.3d 730, 735 (6th Cir. 2010)). But neither alternate suspects nor unspecified audio recordings are favorable. *McNeill v. Bagley*, 10 F.4th 588, 599 (6th Cir. 2021)("The alternative suspect report does not have a clear tendency to exonerate McNeill.").

Here, the Complaint fails to allege specific favorable evidence (*See* Compl., ¶55). First, Buehner alleges that the "Officer Defendants" failed to disclose "coercion" regarding the identifications. (*Id.*, ¶55(a)). But as discussed above, these allegations are not plausibly pleaded under *Iqbal* so they should not be considered. Second, Buehner alleges that a recording was not produced. (*Id.*, ¶55(b))). But again, no allegations are made about how this recording is favorable to Buehner. (*Id.*). So this allegation fails too. Next, Buehner identifies alleged alternate suspects. (*Id.*, ¶55(d)). The Sixth Circuit has found that alternate suspect reports are not favorable. *See* *McNeil*, 10 F.4th at 599. The next allegation fails *Iqbal* because it concludes that unspecified evidence was "withheld and/or destroyed and/or failed to [be] preserved." (Compl., ¶55(e)); *Ashcroft v. Iqbal*, 556 U.S. 662, 686 (2009)(rejecting conclusory "and/or" pleading).

### b) There is no specific allegation as to what reports were suppressed by a particular Officer Defendant.

Even if favorable reports exist, because Buehner fails to allege what evidence was suppressed, this Court should grant judgment to Petkac, Beaman, and Hasan. The Sixth Circuit has found a police officer may commit a constitutional violation by withholding material such that it hinders a prosecutor's responsibility under *Brady*. *Moldowan v. City of Warren*, 578 F.3d 351, 380 (6th Cir. 2009). This requires a complaint to state what was suppressed and when. *See, e.g.*, *Morin v. Erway*, No. 12-15406, 2013 WL 1875998, at *8 (E.D.Mich. May 3, 2013) ("Plaintiff's complaint provides no specific facts in support of his contention that there was evidence, it was material, or that it was suppressed.").

The Complaint lists one paragraph of evidence that allegedly was not disclosed. (*Id.*, ¶55). But it is unclear who failed to receive this evidence: the Prosecutor's Office "or" Buehner's criminal defense attorneys. (*Id.*). If Buehner's defense received the information, then it was not suppressed. Because the Complaint is unclear, and therefore implausible, this Court should grant judgment to Petkac, Beaman, and Hasan.

### c) These reports failed to impact the outcome.

To show materiality for a *Brady* claim, a complaint must allege that the non-disclosed evidence creates a "reasonable probability that, had the evidence been disclosed, the result of the proceeding would have been different." *LeFever v. Ferguson*, 645 F. App'x 438, 442 (6th Cir. 2016) (*quoting Cone v. Bell*, 556 U.S. 449, 470 (2009)). To make that determination, a court considers the undisclosed information in light of the "evidence available that supports the conviction." *LeFever,* 645 F. App'x at 442 (quoting *Jalowiec v. Bradshaw*, 657 F.3d 293, 305 (6th Cir. 2011)) (ellipse omitted); *Barker v. Fleming*, 423 F.3d 1085, 1095 (9th Cir. 2005) (closely evaluating and rejecting materiality of alleged impeachment evidence).

Here, this Court should grant judgment to Petkac, Beaman, and Hasan because there significant evidence at trial that led to Buehner's conviction. Price testified that he was Buehner's cousin (*id.*, ¶40), he drove the truck with Buehner next to him (*id.*, ¶51), and he watched Buehner shoot Mr. Saunders. (*Id.*, ¶¶ 49–51). Mr. Edwards testified that he was feet away from the shooter sitting in the open truck bed. (*Id.*, ¶11). And he identified Buehner as the shooter. (*Id.*, ¶48). This is significant eyewitness testimony implicating Buehner. *State v. Robinson*, 2014-Ohio-1624, ¶12 (8th Dist.) ("even where discrepancies exist, eyewitness identification testimony alone is sufficient to support a conviction so long as a reasonable juror could find the eyewitness testimony to be credible), *citing State v. Johnson*, 2014-Ohio-494, ¶52 (8th Dist.), *State v. Jordan*, 2005-Ohio-3790, ¶14 (10th Dist.).

The significant testimony by Price and Mr. Edwards would not have been overcome by the Jenkins and Powell statements. Jenkins said that the white driver was the shooter, not the middle passenger. (Compl., ¶19). But there are no allegations about how close she was to the events—she could not have been closer than Price and Mr. Edwards. And she could not have known Buehner better than Price, his cousin. Like Jenkins, Powell was far away from the action, in her house. (*Id.*, ¶43). She too lacked the familiarity and close proximity to Price and Mr. Edwards.

Because of the testimony of Price and Mr. Edwards, there isn't a reasonable probability that alleged statements by Jenkins and Powell would have changed the outcome of the criminal trial. Therefore, this Court should grant judgment to Petkac, Beaman, and Hasan.

2. **Plaintiff's Complaint does not plausibly allege that Petkac, Beaman and Hasan withheld reports from the Prosecutor.**

a) **Petkac is not liable.**

Because there are no allegations that Petkac received the information or that he individually failed to provide this information to the prosecutor, this Court should grant judgment to Petkac. *D'Ambrosio v. Marino*, 747 F.3d 378, 390 (6th Cir. 2014). In *D'Ambrosio*, the Sixth Circuit rejected a *Brady* claim because there were no allegations that the exculpatory value was apparent to that officer, and no allegations that the individual officer failed to provide anything to the prosecutor. *Id.* Just as in *D'Ambrosio*, there are no allegations regarding the apparent value of the Jenkins and Powell statements, and no specific allegations that Petkac failed to provide them to prosecutor. (*See* Compl.,). Further, Buehner can point to no case law that shows it was clearly established that a supervising officer would violate a constitutional right by failing to provide a witness statement to the prosecutor regarding an alternate suspect that he was not aware of. *McNeill v. Bagley*, 10 F.4th 588, 599 (6th Cir. 2021)("The alternative suspect report does not

have a clear tendency to exonerate McNeill."). Therefore, the Court should grant judgment to Petkac.

### b) Beaman and Hasan are not liable.

First, this Court should grant judgment to Beaman and Hasan because there are no specific allegations that they knew about and then withheld allegedly exculpatory evidence. *D'Ambrosio*, 747 F.3d at 390. Regarding the Jenkins statement, she provided her statement to officers at the scene, not Beaman. (Compl., ¶19). For Powell, the Complaint alleges that she told "Beaman and Hasan" that all the individuals in the truck were Black. (*Id.*, ¶43). But to the extent this allegation can overcome its group pleading and immateriality failures, it still fails to state a claim against Beaman and Hasan because <u>there are no specific allegations that either of them failed to provide this statement to the prosecutor.</u> Second, even if the Complaint does state a claim against Beaman and Hasan, Buehner cannot identify a case that demonstrates that it was clearly established in 2001 that that a witness statement relating to an alternate suspect needed to be turned over to the prosecutor. *See, e.g.*, *McNeill*, 10 F.4th at 599. For these reasons, Beaman and Hasan are entitled to qualified immunity and judgment as a matter of law.

### D. Movants are entitled to judgment as a matter of law on County Four—Malicious Prosecution--because there are no allegations regarding what the prosecutor received.

#### 1. The elements of a federal malicious prosecution claim.

To state a malicious prosecution claim, a complaint must plausibly allege the following elements: (1) the defendant made, influenced, or participated in the decision to prosecute the plaintiff; (2) there was no probable cause for the prosecution; (3) as a consequence of the legal proceedings, the plaintiff suffered a deprivation of liberty apart from the initial arrest; and (4) the criminal proceeding was resolved in the plaintiff's favor. *France v. Lucas*, 836 F.3d 612, 625 (6th Cir. 2016) (citation omitted).

**a) There was probable cause to prosecute.**

Buehner was indicted by a grand jury. *See State of Ohio v. Michael Buehner*, CR-02-417994, January 11, 2022. "[G]rand jury proceedings enjoy a presumption of regularity[.]" *United States v. Wahib*, 578 F.Supp.3d 951, 955 (N.D.Ohio 2022). A grand jury indictment establishes probable cause as a matter of law. *Bickerstaff v. Lucarelli*, 830 F.3d 388, 398 (6th Cir. 2016)(considering grand jury indictment under Rule 12). Thus, Plaintiff's claim fails because "[i]t has long been settled that 'the finding of an indictment, fair upon its face, by a properly constituted grand jury, **conclusively determines the existence of probable cause** for the purpose of holding the accused to answer.'" *Williams v. Schismenos*, 258 F. Supp.3d 842, 860 (N.D.Ohio 2017), aff'd, 738 F. App'x 342 (6th Cir. 2018) (emphasis added), *citing Higgason v. Stephens*, 288 F.3d 868, 877 (6th Cir. 2002)(*quoting Ex parte U.S.*, 287 U.S. 241, 250, 53 S.Ct. 129, 131, 77 L.Ed. 283 (1932). "The presence of an indictment returned by a properly constituted grand jury is **fatal** to plaintiffs' malicious prosecution claim." *Williams, id.* Thus, even if officers did influence the decision to charge, because Buehner was identified by multiple eyewitnesses, and he was indicted by a grand jury, this Court should grant judgment as matter of law to Petkac, Beaman, and Hasan.

Even beyond the grand jury's indictment, there was probable cause that Buehner had committed the crime charged. The Supreme Court has "often" reminded courts that probable cause is not a "high bar." *Lester v. Roberts*, 986 F.3d 599, 608 (6th Cir. 2021) (quoting *Kaley v. United States*, 571 U.S. 320, 338 (2014)). It requires only a "probability" of criminal activity. *Id.* (citation omitted). One eyewitness alone, or sometimes combined with something slightly more, is enough. *Legenzoff v. Steckel*, 564 F. App'x 136, 142 (6th Cir. 2014) ("This Court has held that an eyewitness identification and accusation, by itself, is sufficient to establish probable cause."). *But see Ouza v. City of Dearborn Heights, Michigan*, 969 F.3d 265, 282 (6th Cir. 2020) (one

eyewitness plus corroboration).The Complaint alleges that two eyewitnesses told police that Buehner shot and killed Jerry Saunders, including Buehner's cousin, Price, who claimed Buehner was in the truck with him and the shooter. (Compl., ¶¶ 11, 48–51). Physical evidence and a half-dozen other witnesses confirmed that night there was a shooting by a white man in a small black truck. (*See* Compl., ¶¶ 15, 19, 25, 28, 43). Thus, there was probable cause. Because there was probable cause, and Buehner was indicted, this Court should grant judgment to Defendants.

### b) Plaintiff does not provide specific allegations regarding each of the Officers alleged contact with the Prosecutor.

An officer may be liable for malicious prosecution if he "significantly impacted" the decision to bring charges. *Jones v. City of Elyria, Ohio*, 947 F.3d 905, 918 (6th Cir. 2020) (citation omitted). This includes "actually influenc[ing] the prosecutor's ultimate decision to bring charges." *Id.* (citation committed); *see also Tanner v. Walters*, 98 F.4th 726, 734 (6th Cir. 2024).

While Plaintiff has included a rote recitation of the law, there are no specific allegations that these officers had direct contact with the prosecutor, significantly impacted the decision prosecute, nor are there any allegations about what the prosecutor knew as a result of contact with a particular police officer Defendant. (*Compl., id.*). There are also no allegations about how a specific officer here actually influenced the prosecutor. (*Id.*). This claim is yet another example of "group pleading." Both failures are fatal to Buehner's malicious prosecution claim, so this Court should grant judgment to Petkac, Beaman, and Hasan.

### c) No deliberate or reckless falsehoods.

Even without probable cause, because there are no allegations of deliberate or reckless falsehoods, this Court should grant judgment to Defendants. To sustain a malicious prosecution claim, the Complaint must allege that a specific officer made statements that were deliberately false or with the reckless disregard for the truth. *Price v. Montgomery Cnty., Kentucky*, 72 F.4th 711, 724 (6th Cir. 2023), *cert. den.* 144 S. Ct. 2499 (2024). Mistakes and even negligence are not actionable. *Id*; see also <u>*Johnson v. Moseley,* 790 F.3d 649, 655 (6th Cir. 2015)</u>:

> The Sixth Circuit further clarified the point in *Robertson,* 753 F.3d at 617, holding that even false testimony is not actionable as malicious prosecution unless deliberate—*i.e.*, given with knowledge of, or reckless disregard for, its falsity. "Allegations of negligence or innocent mistake are insufficient." *Id.* at 617 n. 7 (quoting *Franks v. Delaware,* 438 U.S. 154, 171, 98 S.Ct. 2674, 57 L.Ed.2d 667 (1978)). Even more recently, the rule was succinctly stated in *Newman v. Township of Hamburg,* 773 F.3d 769 (6th Cir.2014). A police officer violates a suspect's clearly established right to freedom from malicious prosecution under the Fourth Amendment "only when his deliberate or reckless falsehoods result in arrest and prosecution without probable cause." *Id.* at 772. Again, we see that a defendant's participation must be marked by some kind of blameworthiness, something beyond mere negligence or innocent mistake, to satisfy the elements of a malicious prosecution claim under the Fourth Amendment.

To be liable for "participating in the decision to prosecute, the officer must participate in a way that aids in the decision, as opposed to passively or neutrally participating." *Richards v. County of Washtenaw*, 818 Fed. Appx. 487, 493-494 (6th Cir. 2020) (conclusory allegation of a misrepresentation, taken alone, cannot establish the decision to prosecute element for malicious prosecution where there was no evidence of furthering prosecution beyond the initial report and trial testimony). *See also Johnson*, 790 F.3d at 655 (6th Cir. 2015) (this Court determined the plaintiff could not establish that the official participated in the investigation after the plaintiff's arrest, testified for the prosecution at any stage, or "pressed" for prosecution in any non-neutral way); *Newman, supra*, at 772 (6th Cir. 2014) (lack of attention to detail is not sufficient is generally not the participation necessary to establish a claim); *Skousen v. Brighton High School*,

305 F.3d 520, 529 (6th Cir. 2002) (only evidence was that the officer collected evidence and submitted it to the prosecutor's office).

Furthermore, an officer cannot be held accountable for a decision to prosecute simply because he turns over to the prosecution his truthful materials. *Sykes*, *supra*, at 314. A plaintiff would need to establish that the officer's falsehoods or misstatements were both "material, or necessary" to the prosecution and were made "knowingly and deliberately, or with a reckless disregard for the truth." *Id.*, at 305, 312. A recent Sixth Circuit decision in *Jones v. Naert*, 121 F. 4th 558 (6th Cir. 2024) is instructive on this point. In *Jones,* the Court upheld summary judgment on the malicious prosecution claim because the plaintiff failed to present any evidence that the officer, or any alleged false statements provided by the officer, influenced the decision to prosecute her. *Id.* at 569.

Here, there are no allegations that eyewitness identification evidence was known to be false, so this Court should grant judgment to Defendants. The Complaint concludes that the identifications of Buehner and Price were fabricated. (Compl., ¶51). But there are no allegations that these identifications were known to be false by the officers. Mr. Edwards identified Buehner from the lineup. (Compl., ¶48). And while he was not "truly" positive (*id.*), there are no allegations he withdrew his identification. (*Id.*). Similarly, even if Price fabricated his confession to implicate himself and his cousin, there are no allegations that the officers knew the confession was false. (*Id.*, ¶50).

### 2. Petkac, Beaman, and Hasan are not otherwise liable for malicious prosecution.

This Court should grant judgment to Petkac, Beaman, and Hasan because there are no specific allegations that they participated in the decision to charge or provided deliberate or recklessly false information to the prosecutor. (*see* Compl.); *see, e.g.*, *Jones v. City of Elyria, Ohio*, 947 F.3d 905, 918 (6th Cir. 2020); *Young v. City of Muskegon Heights*, No. 1:23-CV-460,

2024 WL 3439671, at *6 (W.D.Mich. July 17, 2024)(no liability for uninvolved officer under malicious prosecution theory).

Alternatively, this Court should grant judgment to the three Officers because: (A) Buehner can identify no case that it was clearly established that an uninvolved supervisor, Petkac, who carried out no investigatory functions, could be liable for a malicious prosecution claim; (B) Buehner can identify no case that shows it was clearly established that it would violate someone's constitutional right to investigate someone identified by multiple eyewitnesses which was also supported by corroborating evidence. Absent such case law from 2001, they are all entitled to qualified immunity.

### E. Because Petkac cannot be liable for merely supervising, this Court should grant judgment in his favor on Count 10–Supervisory Liability.

Because there are either no allegations implicating Petkac (who was a line supervisor), and he is immune, this Court should grant judgment in his favor.

#### 1. There is no liability for Petkac.

The Sixth Circuit has repeatedly held that a "supervisor cannot be held liable simply because he or she was charged with overseeing a subordinate who violated the constitutional rights of another." *Miller v. Gettel*, No. 22-1034, 2023 WL 2945340, at *8 (6th Cir. Apr. 14, 2023) (quoting *Peatross v. City of Memphis*, 818 F.3d 233, 241 (6th Cir. 2016)). Thus, a complaint must allege that a supervisor "encouraged the specific incident" or otherwise "directly participated in it." *Id.* (quotation marks and citation omitted); *Jackson v. Cuyahoga Cnty.*, No. 1:20-CV-02649, 2021 WL 2018853, at *8 (N.D.Ohio May 20, 2021) (Barker, J.)(holding same).

The Complaint alleges that Petkac was a lieutenant. (Compl., ¶24). But there are no plausibly pleaded allegations that he had a role in the Jerry Saunders homicide investigation. Instead, the Complaint focuses on "Hasan and Beaman," which appear grouped together more

than 30 times in the Complaint. Petkac, in contrast, only appears in a recitation of legal conclusions. (*See, e.g.*, Compl., ¶¶ 207–211). Because there are no specific allegations that Petkac engaged in unconstitutional conduct, this Court should grant judgment in his favor.

### 2. Alternatively, Petkac has qualified immunity.

Alternatively, Petkac is immune because Buehner cannot identify a case that clearly establishes that, in 2001, a supervisor violates a constitutional right by taking a passive role or not being actively involved in an investigation, this Court should grant judgment in his favor. *Peatross*, 818 F.3d at 241.

### F. The state-law claims fail as a matter of law.

This Court should apply state-law using the *Iqbal* pleading standard. *See, e.g.*, *Lassen v. Lorain Cnty., Ohio*, No. 1:13 CV 1938, 2014 WL 3511010, at *7 (N.D.Ohio July 14, 2014)..

### 1. Petkac, Beaman, and Hasan are entitled to judgment as a matter of law on Plaintiff's reckless breach of duty claim in Count Five.

To overcome governmental immunity, a plaintiff must allege how each individual officer acted with malicious purpose, in bad faith, or in a wanton or reckless manner. *See, e.g.*, *Moore v. City of Cleveland*, 2017-Ohio-1156, 87 N.E.3d 858, ¶26 (8th Dist.)(analyzing immunity on an officer-by-officer basis). There are no plausible allegations that Petkac, Beaman, or Hasan acted in bad faith, or in a wanton or reckless manner; therefore, this Court should grant them judgment.

Movants are also entitled to judgment as a matter of law because of the statute of limitations has expired for Plaintiff's tort claims.[4] Any claim for a breach of duty accrued in

---

[4] "R.C. § 2744.04(A) is a special provision governing the statute of limitations in tort cases against political subdivisions and it prevails over the general statutes of limitations contained in R.C. Chapter 2305." *Davis v. Clark Cty. Bd. of Commrs*. (2d Dist.), 2013-Ohio-2758, ¶23, 994 N.E.2d 905, 909, *citing Read v. Fairview Park* (8th Dist. 2001), 146 Ohio App.3d 15, 19, 764 N.E.2d 1079, 1082; accord: *Mauldin v. Youngstown Water, Dep't* (7th Dist.), 2019-Ohio-5065, ¶19 "It applies to political subdivisions and their employees." *Read* at 19 (emphasis added); see also *Pearson v. Columbus* (10th Dist.), 2014-Ohio-5563, ¶10, 26 N.E.3d 842, 847; *Gnezda v. City of N. Royalton* (8th Dist.), 2004-Ohio- 1678; *Lisboa v. Reid* (8th Dist.), 2011-Ohio-5482, ¶9; *Koncsol v. Niles* (11th Dist. 1995), 105 Ohio App.3d 535, 538..

2001 when the investigation took place. The two-year statute of limitations expired in 2003 and Plaintiff did not file suit until July 17, 2024. Clearly, any state law tort claims are time-barred.

### 2. Movants are entitled to judgment as a matter of law on Count Six--civil liability for criminal acts—because the claim is patently untimely.

One Ohio statute makes it a misdemeanor for a public servant to violate someone's constitutional rights, R.C. 2921.45, and another allows a person injured by a criminal act to bring a civil suit, R.C. 2307.60. But Buehner's claim here is untimely. While there is a disagreement whether a one-year statute of limitations applies or a six-year statute of limitations applies, *see Niederst v. Minuteman Cap., LLC*, No. 1:23-CV-117, 2024 WL 3522413, at *15 (N.D.Ohio July 24, 2024)(discussing split), it matters not here. That is because the criminal act under R.C. 2921.45 happens when the right is "deprived," which allegedly happened in 2001, if at all. That is well more than six years ago. As a result, any claim under R.C. 2307.60 is time barred.

### 3. Movants are entitled to judgmetn as a matter of law on Count Seven—the state law malicious prosecution claim.

Beyond probable cause, discussed in detail *supra*, under Ohio law, defendants "cannot be held liable for malicious prosecution when they did not make the decision to prosecute the plaintiff." *Young v. Owens*, 577 F. App'x 410, 417 (6th Cir. 2014); *McKinley v. City of Mansfield*, 404 F.3d 418, 444 (6th Cir. 2005); *Skousen v. Brighton High Sch.*, 305 F.3d 520, 529 (6th Cir. 2002). A prosecutor's independent charging decision typically breaks the causal chain for malicious-prosecution purposes. *Novak v. City of Parma, Ohio*, 33 F.4th 296, 307 (6th Cir. 2022), cert. denied, 143 S.Ct. 773, 215 L.Ed.2d 45 (2023). Because the Complaint fails to state a state-law malicious prosecution claim, this Court should grant judgment to Petkac, Beaman, and Hasan.

**4. Movants are entitled to judgment as a matter of law on Count Eight--abuse of process.**

"In order to establish a claim of abuse of process, a plaintiff must satisfy three elements: '(1) that a legal proceeding has been set in motion in proper form and with probable cause; (2) that the proceeding has been perverted to attempt to accomplish an ulterior purpose for which it was not designed; and (3) that direct damage has resulted from the wrongful use [of] process.'" *Robb v. Chagrin Lagoons Yacht Club* (1996), 75 Ohio St.3d 264, 270, 662 N.E.2d 9, quoting *Yaklevich v. Kemp, Schaeffer & Rowe* (1994), 68 Ohio St.3d 294, 298, 626 N.E.2d 115.

"The tort of abuse of process contemplates something more than the mere filing of a statutorily authorized criminal complaint***." *Broadnax v. Greene Credit Serv.* (2d Dist. 1997), 118 Ohio App.3d 881, 891, 694 N.E.2d 167, 174 (affirming trial court's grant of summary judgment on the plaintiff's abuse of process claim). "**Being `charged by the state, arrested, tried by a jury, and exonerated**, undoubtedly causing him to incur legal expenses, these **are all anticipated by-products of a criminal prosecution and within the ambit of the judicial process**.'" *Palivoda v. Felix* (11th Dist.),, 2011-Ohio-5231, ¶37 (emphasis added).

"[T]he gravamen of the misconduct for which the liability stated in this Section is imposed **is not the wrongful procurement of legal process or the wrongful initiation of criminal** or civil **proceedings**; it is the misuse of process, no matter how properly obtained, for any purpose other than that which it was designed to accomplish." *Palivoda*, 2011-Ohio-5231, ¶24 (emphasis added), citing Restatement of the Law 2d, Torts, Section 682, Comment a. "[I]n order to show the process was perverted to accomplish an ulterior purpose the plaintiff must identify both **an act committed during the process that was not proper in the normal conduct of the proceeding** and the defendant's ulterior motive." *Cox v. Oliver* (2d Dist.), 2016-Ohio-4575, ¶15, 66 N.E.3d 1101, 1105 (emphasis added), citing *Palivoda*, 2011-Ohio-5231, ¶44.

"[T]he improper purpose usually takes the form of coercion to obtain a collateral advantage, not properly involved in the proceeding itself, such as the surrender of property or the payment of money, by the use of the process as a threat or a club." Simply, abuse of process occurs where someone attempts to achieve through use of the court that which the court is itself powerless to order. *Robb*, 662 N.E.2d at 14 (quoting Prosser & Keeton, The Law of Torts § 121, at 898 (5th ed.1984)); *Alabsi v. City of Cleveland*, No. 1:20-CV-01933-CEH, 2022 WL 875243, at *4 (N.D.Ohio Mar. 23, 2022)(abuse of process does not "occur when a party uses the court to pursue a legal remedy that the court is empowered to give.").

Plaintiff alleges (in the alternative), that there was probable cause, but there was an abuse of process because Defendants "caused the criminal prosecutions of Michael Buehner despite knowing these prosecutions depended upon fabricated evidence and *Brady* evidence, in order to secure his wrongful conviction." (Compl. ¶186). However, Plaintiff does not allege that the process was used by these Defendants to obtain a collateral advantage apart from the proceeding itself, nor that the trial court was powerless to issue orders within the context of the prosecution. Absent these necessary elements, Plaintiff's abuse of process claim fails as a matter of law.

## CONCLUSION

For all these reasons, this Court should grant judgment as a matter of law and/or qualified immunity to Petkac, Beaman, and Hasan on all the federal and state-law claims.

Respectfully submitted,

/s/ *John D. Latchney*
Kenneth A. Calderone (0046860)
John D. Latchney (0046539)
Hanna, Campbell & Powell, LLP
*Attorneys for Defendants Sahir Hasan,*
*Michael Beaman, and Joseph Petkac*

## LOCAL RULE 7.1(f) CERTIFICATION

I hereby certify that this has been assigned the complex track and does not exceed 30 pages.

/s/ *John D. Latchney*
John D. Latchney (0046539)