**IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION**

| | |
|---|---|
| **MICHAEL BUEHNER,** | Case No. 1:24-cv-1218 |
| Plaintiffs, | |
| | Judge Pamela Barker |
| -vs- | |
| **THE CITY OF CLEVELAND, ET AL.,** | **PLAINTIFF'S OPPOSITION TO THE CUYAHOGA COUNTY DEFENDANTS' MOTION TO DISMISS** |
| Defendants. | |

For the reasons set forth in the accompanying memorandum, the Court should deny

Defendants' Motion to Dismiss (ECF No. 22).

> */s/Elizabeth Bonham*
> Sarah Gelsomino (0084340)
> Elizabeth Bonham (0093733)
> FG+G
> 50 Public Square, Suite 1900
> Cleveland, OH 44113
> T: 216-241-1430 / F: 216-621-0427
> *sarah@FGGfirm.com*
> *elizabeth@FGGfirm.com*
> Jacqueline Greene (0092733)
> FG+G
> 35 East 7th Street, Suite 201
> Cincinnati, OH 45202
> T: 513-572-4200 / F: 216-621-0427
> *jacqueline@FGGfirm.com*
>
> Russell A. Randazzo (0082221))
> Randazzo Law, L.L.C.
> 55 Public Square, Suite 2100
> Cleveland, OH 44113
> T: 216-350-4434 / F: 216-274-9318
> *russell@rrandazzolaw.com*
>
> *Counsel for Plaintiff Michael Buehner*

i

# TABLE OF CONTENTS

TABLE OFAUTHORITIES .................................................................................................... i

STATEMENT OF THE ISSUES ........................................................................................... i

MEMORANDUM IN OPPOSITION ..................................................................................... 1

I.    Factual and Procedural Background ............................................................................... 1

   A.    Summary of the well pleaded factual allegations ..................................................... 1

   B.    Causes of action against the County and former prosecutors Keim and Bombik in their
   individual capacities .................................................................................................... 4

   C.    Why Michael pleaded certain facts in the alternative ............................................... 5

II. Standard of Review ......................................................................................................... 6

III. Law & Argument ........................................................................................................... 7

   A.    The Court should not dismiss the claims against individual former prosecutors Keim or
   Bombik. ......................................................................................................................... 7

      i.    The Prosecutor Defendants are not entitled to absolute immunity. ........................ 7

      ii.    The Prosecutor Defendants are not entitled to qualified immunity. ...................... 9

      iii.    The Prosecutor Defendants are not entitled to state law immunity. ....................11

      iv.    The Eleventh Amendment has nothing to do with the claims against the Prosecutor
      Defendants in this case. ............................................................................................ 12

   B.    The Court should not dismiss the claims against Cuyahoga County. ....................... 13

      i.    Cuyahoga County is the proper defendant for the *Monell* claim. ....................... 13

      ii.    The County is not entitled to dismissal based upon the sufficiency of the pleadings ............. 17

      iii.    Plaintiff's state law claims are not brought against Cuyahoga County ................. 20

IV. Conclusion ...................................................................................................................... 20

CERTIFICATE OF COMPLIANCE WITH LOC. R. 7.1 .................................................... 22

CERTIFICATE OF SERVICE ............................................................................................. 22

**TABLE OFAUTHORITIES**

## Cases

*Andrews v. City of Cleveland,* 112 F.4th 436 (6th Cir. 2024)......................................................... 5

*Ashcroft v. Iqbal,* 556 U.S. 662 (2009)............................................................................. 6, 9, 19

*B & G Towing, LLC v. City of Detroit, MI,* 828 F. App'x 263 (6th Cir. 2020)............................ 6

*Beckett v. Ford,* 384 F. App'x 435 (6th Cir. 2010)................................................................11

*Bellamy v. City of New York,* 914 F.3d 727 (2d Cir. 2019) ............................................. 14

*Brady v. Maryland,* 373 U.S. 83 (1963)................................................................... *passim*

*Brotherton v. Cleveland,* 173 F.3d 552 (6th Cir. 1999)...................................................... 15, 18

*Buckley v. Fitzsimmons,* 509 U.S. 259 (1993) ........................................................... 7, 13

*Buehner v. State,* Cuyahoga County No. 23-983276 ..................................................... 1

*Burchwell v. Warren Cty., Ohio,* 582, F. App'x 656 (6th Cir. 2014) ............................................ 15

*Burge v. Parish of St. Tammany,* 187 F.3d 452 (5th Cir. 1999)...................................................... 14

*Burns v. Reed,* 500 U.S. 478 (1991)....................................................................................... 8

*Cady v. Arenac Cty.,* 574 F.3d 334 (6th Cir. 2009) .................................................... 15

*Connick v. Thompson,* 563 U.S. 51 (2011) ........................................................... 13, 14, 15

*D'Ambrosio v. Marino,* 747 F.3d 378 (6th Cir. 2014)....................................................... 15, 18

*Daily Servs., LLC v. Valentino,* 756 F.3d 893 (6th Cir. 2014) ...................................................... 6

*Evans–Marshall v. Bd. of Educ. of Tipp City Exempted Village Sch. Dist.,* 428 F.3d 223 (6th Cir. 2005)................................................................................................................ 10

*Fritz v. Charter Twp. of Comstock,* 592 F.3d 718 (6th Cir. 2010) ............................................... 6

*Gillispie v. Miami Twp.,* 18 F.4th 909 (6th Cir. 2021).......................................................... 10

*Goldstein v. City of Long Beach,* 715 F.3d 750 (9th Cir. 2013)...................................................... 14

*Green v. Thomas,* 734 F. Supp. 3d 532 (S.D. Miss. May 20, 2024). ............................................. 9

*Gregory v. City of Louisville,* 444 F.3d 725 (6th Cir. 2006)..................................................... 10

*Harris v. Bornhorst,* 513 F.3d 503 (6th Cir. 2008)........................................................... 8

*Hart v. Hillsdale Cty.,* 973 F.3d 627 (6th Cir. 2020)....................................................... 9

*Hope v. Pelzer,* 536 U.S. 730 (2002) ....................................................................................11

*Jackson v. City of Cleveland,* 64 F.4th 736 (6th Cir. 2023). ..................................................... 8, 18

*Jackson v. City of Cleveland,* 925 F.3d 793 (6th Cir. 2019)............................................. 10, 13, 17

*Jackson v. Cleveland,* 622 F. Supp. 636 (N.D. Ohio 2022)....................................................... 18

*JPMorgan Chase Bank, N.A. v. Winget,* 510 F.3d 577 (6th Cir. 2007)............................................ 6

*Kalina v. Fletcher,* 522 U.S. 118 (1997) .......................................................................... 7, 8

*Leatherman v. Tarrant Cnty. Narc. Intel. & Coord. Unit,* 507 U.S. 163 (1993) .......................... 14

*McPherson v. Kelsey,* 125 F.3d 989 (6th Cir. 1997) ..................................................... 16

*Miller v. Maddox,* 866 F.3d 386 (6th Cir. 2017) ..................................................... 10

*Moldowan v. City of Warren,* 578 F.3d 351 (6th Cir. 2009) ........................................ 10

*Monell v. Dep't of Soc. Servs.,* 436 U.S. 658 (1978)................................................... *passim*

*Owens v. City of Independence,* 445 U.S. 622 (1980) ..................................................... 14

*Pearson v. Callahan,* 555 U.S. 223 (2009) ....................................................................11

*Pembaur v. City of Cincinnati*, 475 U.S. 469 (1986) ................................................................ 13, 17

*Price v. Montgomery Cty.,* 144 S.Ct. 2499 (2024) ........................................................................ 6

*Price v. Montgomery Cty.,* 72 F.4th 711 (6th Cir. 2024) .......................................................... 6, 7

*Pusey v. City of Youngstown,* 11 F.3d 652 (6th Cir. 1998) ..................................................... 14, 15

*Robinson v. Mahoning County*, No. 4:16-3011, 2017 WL 1399931 (N.D. Ohio April 19, 2017) 15

*Rogers v. Jarrett,* 63 F.4th 971 (5th Cir. 2023) ............................................................................ 7

*Rouse v. Stacy,* 478 F.App'x 945 (6th Cir. 2012) ......................................................................... 8

*Spurlock v. Thompson,* 330 F.3d 791 (6th Cir. 2003) .................................................................. 7

*State v. Buehner,* 2021-Ohio-4432 (Ohio Ct. App. Nov. 1, 2018) ........................................... 1, 3

*State v. Buehner,* 2021-Ohio-4435 (Ohio Ct. App. Dec. 16, 2021) .......................................... 1, 3

*State v. Buehner,* Cuyahoga County No. CR-02-417994-ZA ....................................................... 1

*Vakilian v. Shaw*, 335 F.3d 509 (6th Cir. 2003) ........................................................................... 9

*Watkins v. Healy,* 986 F.3d 648 (6th Cir. 2021) ........................................................................... 8

*Wesley v. Campbell*, 779 F.3d 421 (6th Cir. 2015) ....................................................................... 9

**Statutes**

42 U.S.C. §1983 ....................................................................................................................... 6, 7, 9

Ohio Revised Code § 2307.60 ................................................................................................... 11, 19

# STATEMENT OF THE ISSUES

Defendants Cuyahoga County and former County prosecutors Keim and Bombik have filed a Motion to Dismiss under Federal Rules of Civil Procedure 12(b)(1), (b)(6), and (c). The individual former prosecutors contend that they are entitled to Eleventh Amendment immunity under Rule 12(b)(1) and that they are otherwise immune from either suit or from liability under Rule 12(b)(6). The County contends it is immune from liability and that Plaintiff has not sufficiently pleaded some of his claims under Rule 12(b)(6). For purposes of this Motion, the Rule 12(c) basis is redundant with the 12(b) bases for relief.

Plaintiff contends that none of these Defendants have immunity from suit or liability and that he has sufficiently pleaded all of his claims against them under Rules 12(b)(6) and (c). Further, Eleventh Amendment immunity is not at issue here so Defendants are not entitled to relief under Rule 12(b)(1). This Court should permit Plaintiff discovery on his claims.

The Court should deny the Motion in full.

**MEMORANDUM IN OPPOSITION**

Cuyahoga County prosecutors, following County policy, together with Cleveland police, falsely convicted Michael Buehner of a 2001 murder and had him wrongfully imprisoned for decades. Years later, Ohio courts acknowledged the *Brady* violations and other misconduct that caused this theft of liberty. *See State v. Buehner,* 2021-Ohio-4432 (Ohio Ct. App. Nov. 1, 2018) (reversing denial of motion for new trial and directing trial court to consider evidence of *Brady* violations) ("*Buehner* I"); *State v. Buehner,* 2021-Ohio-4435 (Ohio Ct. App. Dec. 16, 2021) (after evidentiary hearing, ordering a new trial) ("*Buehner* II"); Dec. 23, 2024 J.E., *Buehner v. State,* Cuyahoga County No. 23-983276 (recognizing *Brady* violations and declaring Michael a wrongfully imprisoned person under Ohio law). Despite this, Cuyahoga County re-tried Michael for the murder, but once the misconduct was uncovered, the new jury acquitted him in less than two hours. *See* July 19, 2023 J.E., *State v. Buehner,* Cuyahoga County No. CR-02-417994-ZA. Michael named the County, the City, and each entity's individual officers who violated his rights in this federal civil rights action. The County and its former prosecutors Keim and Bombik now move for dismissal on the pleadings. This Court should deny their Motion (ECF No. 22).

### I.    Factual and Procedural Background

#### A.  Summary of the well pleaded factual allegations

In 2001, someone tragically shot and killed young Jerry Saunders during a smalltime crack deal on the east side of Cleveland. (Compl., ECF No. 1 at ¶¶9-11). Months later, as the police investigation languished, a confidential informant suggested for the first time that he had heard Michael Buehner was involved. (¶40.) Police and prosecutors never connected Michael to the crime with any physical evidence—they never uncovered a gun, a car, video, blood, prints, other forensics, or anything else even putting Michael at the scene. (¶¶52, 53, 67.) Nevertheless, police and prosecutors pursued Michael as a suspect and ultimately fabricated a murder case against him.

The state's case against Michael depended wholly upon the testimony of two witnesses. Randy Price testified he was driving that night in the small black truck from which Jerry Saunders was shot and that Michael was the shooter. (¶¶49.) Lawone Edwards testified that he was there together with Saunders, and before he escaped, he saw Michael shoot the gun. (¶48.) Both witnesses later recanted. Moreover, both supplied testimony during postconviction proceedings that the Defendants in this litigation coerced their original statements. Price and Edwards testified that Defendants' methods of coercion included threatening them with criminal penalties; bribing them by promising to relax criminal penalties; forcing them to identify suspects using biased lineup procedures; and manipulating their testimony using fabricated and later suppressed evidence. (¶¶47-55.)

Meanwhile, Defendants concealed and destroyed exculpatory and impeachment evidence such that Michael could not mount a successful criminal defense. (¶¶55-59.) Defendants withheld statements of multiple eyewitnesses who would have testified the shooter was Black although Michael is white. Defendants also withheld the statement and identity of a witness who would have testified she believed a specific alternate suspect was to blame. Further, Defendants seized and destroyed that suspect's possibly-involved truck such that Michael could never inspect it. To this day, Defendants have never disclosed the identity of the informant who originally implicated Michael, nor the circumstances under which police obtained that information. (*Id.*) This is merely some of the misconduct that deprived Michael of a fair trial. Based upon this misconduct, Prosecutors Keim and Bombik had Michael indicted, tried, and convicted, forcing him to lose over 20 years of his life to state prison. (¶¶66-72).

During his decades-long incarceration, Michael and his attorneys worked to uncover the misconduct that caused his wrongful conviction. As Michael alleged in detail in his Complaint, he

uncovered the above-described specific evidence that Defendants committed *Brady* violations, fabricated evidence, obtained identifications through unconstitutional practices, and employed other misconduct to secure his conviction. (¶¶48-51, 55-62.)

With respect to some of the misconduct that Michael uncovered, the Eighth District Court of Appeals and the Cuyahoga County Common Pleas Court have already held that *Brady* violations occurred. *See Buehner* I at ¶¶26-27, 30; *Buehner* II at ¶¶48-63. Thus, some of the *Brady* evidence at issue in this case has already been vetted in briefing and evidentiary hearings during postconviction proceedings and settled as a matter of law. Further, a Cuyahoga County jury already acquitted Michael of the underlying murder after a new trial. Thus, his innocence has also been vetted during the criminal retrial proceedings. July 19, 2023 J.E., *State v. Buehner,* Cuyahoga County No. CR-02-417994-ZA. Now, Michael has been declared a wrongfully imprisoned person under Ohio law. Dec. 23, 2024 J.E., *Buehner v. State,* Cuyahoga County No. 23-983276. Given the prior proceedings, there is no question that the injustices Michael alleged in his Complaint really happened to him.

What the prior proceedings left undecided—and what Michael needs civil discovery in this case to unveil—is which of the Defendants here were responsible for which of the wrongs done to him. In addition, as alleged in the Complaint, Michael believes that Defendants committed even further misconduct beyond what state courts have already acknowledged, but are concealing it from him in the same fashion as they concealed the misconduct he *was* able to expose. (¶¶63-65.) With respect to these allegations, Michael has amply pleaded them and he needs discovery to prove them up. In the end, the evidence in this case may not bear out certain of Michael's claims against certain Defendants. At this stage, however, the Court should conclude that Michael pleaded his claims sufficiently to withstand dismissal under Federal Rules of Civil Procedure 12(b) or (c).

### B. Causes of action against the County and former prosecutors Keim and Bombik in their individual capacities

The allegations relevant to the Motion before the Court—Michael Buehner's allegations against Cuyahoga County and its former prosecutors Bombik and Keim—are more than sufficient to merit discovery. Michael brought a straightforward *Monell* claim against Cuyahoga County. (Count 9, Compl., ECF No. 1., at ¶¶189-198.) This claim asserts that the County had an official policy of causing wrongful convictions using misconduct including *Brady* violations, and that this official policy caused the misconduct at issue here. The claim asserts that, in the alternative, the County's policy was enacted through an official written and unwritten rule, ratification by County decisionmakers, failure to train and supervise County agents, and a custom of tolerance to similar violations. Michael supported this claim by explaining how the County caused his wrongful conviction (¶¶1, 7-8, 55-71). He included pages of factual allegations summarizing the County's pattern and practice of doing the same to others over decades (*e.g., id.* at ¶¶74, 77-79, 105-117).

Michael also brought federal and state law claims against former County prosecutors Keim and Bombik in their individual capacities. (*Id.* at ¶7.) The individual capacity claims under federal law (42 U.S.C. §1983) are Count 1, unlawful identification (¶¶124-131); Count 2, fabrication of evidence (¶¶132-141); Count 3, *Brady* violations (¶¶142-153); and Count 4, federal malicious prosecution (¶¶154-164). The individual capacity claims under state law are Count 5, common law breach of duty (¶¶165-169); Count 6, statutory liability for criminal acts (¶¶170-175); and Counts 7 and 8 pleaded in the alternative for state law malicious prosecution or abuse of process (¶¶176-188). Michael supported these claims by explaining how prosecutors Bombik and Keim fabricated and suppressed *Brady* evidence and maliciously prosecuted him. (*E.g., id.* at ¶¶1, 7-8, 55-71.)

Altogether, Michael pleaded Count 9 against the County and Counts 1-8 against former prosecutors Keim and Bombik in their individual capacities.

### C. Why Michael pleaded certain facts in the alternative

Because he does not and cannot know the whole story of his wrongful conviction until he is permitted to take discovery, Michael necessarily pleaded certain facts and theories in the alternative. First, he pleaded in the alternative that it was the prosecutors and/or the police who violated his rights in the ways he alleged. (Compl*., ECF No. 1 at ¶¶55-71 (allegations against prosecutors and police are in the alternative)). This is because to prove his civil *Brady* claim against prosecutors, Michael must establish that they did not disclose the at-issue *Brady* evidence to his criminal defense, while to prove his claim against police, he must establish that police did not disclose the evidence to prosecutors. *See, e.g., Andrews v. City of Cleveland,* 112 F.4th 436, 443-44 (6th Cir. 2024). In other wrongful conviction cases like Michael's, City officials have pointed the finger at County prosecutors to insulate themselves from liability and vice versa. *Id.* In all cases, it is the police and/or the prosecutors, rather than the civil rights plaintiffs, who possess the information that will reveal who is culpable for what. Here, the Ohio courts who considered the at-issue *Brady* evidence in the past did not decide whether it was police, prosecutors, or both who were responsible for which misconduct. Because the facts uncovered prior to the litigation implicate both the City and County and their individual agents, but are not yet fully developed, Michael pleaded against both.

Similarly, Michael pleaded in the alternative that to the extent the prosecutor Defendants violated his rights, they did so in their investigatory and/or their advocacy capacities. (Compl., ECF No. 1 at ¶¶1, 7, 53, 56, 58, 62-63, and subheading at PAGEID#11 (allegations that prosecutors acted in their investigatory capacity are in the alternative)). This is because to shield themselves from suit in wrongful conviction cases like this one, County prosecutors will invoke absolute immunity to the extent they committed misconduct in their capacity as advocates. Indeed, the County has done so by making this Motion. As the County concedes*, absolute prosecutorial

immunity is not available for prosecutor conduct undertaken in an investigatory or other non-advocacy capacity. Because the facts uncovered prior to this litigation implicate prosecutor misconduct done both within and outside of the advocacy role, but the facts as to which conduct happened in which capacity are not fully developed, Michael pleaded in the alternative.

In sum, Michael pleaded his claims in the alternative because although he already has evidence that the County and the City and their agents violated his rights, he needs discovery to establish precisely who did what and in which capacity. Importantly for this Motion, Michael's pleading choice in this regard does not affect the sufficiency of the pleadings under Rule 12(b).

## II. Standard of Review

A motion under Federal Rules of Civil Procedure 12(b)(6) or 12(c) tests the sufficiency of the pleadings only. *Fritz v. Charter Twp. of Comstock*, 592 F.3d 718, 722 (6th Cir. 2010) (internal citations omitted). The pleadings "need to be sufficient to give notice to the defendant as to what claims are alleged" and to "to render the legal claim plausible." *Id*. at 722, citing *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). The allegations "must be taken as true, and the motion may be granted only if the moving party is nevertheless clearly entitled to judgment." *Id*., citing *JPMorgan Chase Bank, N.A. v. Winget*, 510 F.3d 577, 581 (6th Cir. 2007). The Court must construe the Complaint in the light most favorable to the plaintiff. *Daily Servs., LLC v. Valentino*, 756 F.3d 893, 896 (6th Cir. 2014). This pleading standard is "not onerous." *B & G Towing, LLC v. City of Detroit, MI*, 828 F. App'x 263, 266 (6th Cir. 2020), citing *Iqbal*, 556 U.S. at 678-679.

### III. Law & Argument

### A. The Court should not dismiss the claims against individual former prosecutors Keim or Bombik.

### i. The Prosecutor Defendants are not entitled to absolute immunity.

The Court should reject Defendants' argument that former prosecutors Keim and Bombik are entitled to absolute immunity from Michael Buehner's federal claims. (Defs.' Mot., ECF No. 22, PAGEID#5.) As an initial matter, the Court should reject the application of absolute prosecutorial immunity because the doctrine should be abolished. In enacting 42 U.S.C. §1983 to remediate violations of federally protected rights, the United States Congress intended to abrogate prosecutorial immunity. Courts should abide that intention when analyzing 1983 claims. *See, e.g., Price v. Montgomery Cty.,* 144 S.Ct. 2499, 2500, n.2 (2024) (Sotomayor, J., statement respecting the denial of certiorari); *Price v. Montgomery Cty.,* 72 F.4th 711, 727, n.1 (6th Cir. 2024) (Nalbandian, J., concurring in part) (summarizing recent scholarship finding §1983 abrogated common law immunity doctrines); *see also Rogers v. Jarrett,* 63 F.4th 971, 979-81 (5th Cir. 2023) (Willett, J., concurring) ("modern immunity jurisprudence" is "countertextual"); *Kalina v. Fletcher,* 522 U.S. 118, 132 (1997) (Scalia, J., concurring) ("There was, of course, no such thing as absolute prosecutorial immunity when §1983 was enacted.") The ahistoric, atextual application of absolute prosecutorial immunity in wrongful conviction cases produces especially absurd and unjust results. *See, e.g., Price,* 72 F.4th at 720-21 (prosecutor was immune from suit where he intentionally caused the destruction of material evidence, resulting in wrongful murder conviction and imprisonment). Because this court-made immunity doctrine contravenes the text and purpose of §1983 and undermines the rule of law in our criminal justice system, the Court should deny absolute immunity to the prosecutor Defendants here.

In the alternative, the Court should deny Bombik and Keim absolute immunity at this stage of the proceedings because Michael has alleged that their misconduct was not necessarily done in a protected capacity. Defendants concede that absolute immunity does not attach when prosecutors act in a capacity other than as an "advocate for the State." (Defs.' Mot., ECF No. 22, PAGEID#167-68 *citing Buckley v. Fitzsimmons,* 509 U.S. 259, 273 (1993). Indeed, Defendants concede the rule that there are many acts and misdeeds a prosecutor may undertake that are "not absolutely immune merely because they are performed by a prosecutor." (*Id.* quoting *Buckley,* 509 U.S. at 273.)

As the United States Supreme Court and Sixth Circuit Court of Appeals have held, prosecutor conduct *not* shielded by absolute immunity can include conduct "during a preliminary investigation of an unsolved crime," *Buckley,* 509 U.S. at 275; conduct done in an "investigat[ive]" or "administrati[ve]" role, *id.,* at 273; conduct "prior to indictment," *Spurlock v. Thompson,* 330 F.3d 791, 799 (6th Cir. 2003); conduct "before any probable cause hearing" or "arrest warrant" or "grand jury," *Watkins v. Healy,* 986 F.3d 648, 662 (6th Cir. 2021); or conduct while "no adversarial judicial proceeding was taking place," *Jackson v. City of Cleveland,* 64 F.4th 736, 745 (6th Cir. 2023). Binding authority has rejected absolute prosecutorial immunity, for example, for a prosecutor who encouraged criminal activity in order to influence proceedings, *Rouse v. Stacy,* 478 F.App'x 945, 954-55 (6th Cir. 2012); for a prosecutor's advice and direction to police during investigations, *Burns v. Reed,* 500 U.S. 478, 494 (1991), *Harris v. Bornhorst,* 513 F.3d 503, 509 (6th Cir. 2008); and where prosecutors act as a witness when swearing out a complaint, *Kalina,* 522 U.S. at 129-131.

Here, as set forth above, Michael pleaded in the alternative that former prosecutors Keim and Bombik committed their misconduct in a capacity not shielded by absolute immunity. (*See, e.g.,* Compl., ECF No. 1, at ¶¶1, 7, 53, 56, 58, 62-63, and subheading at PAGEID#11). In his

Complaint, Michael specifically sues Keim and Bombik on the basis that all their alleged actions were taken "in their investigatory or prosecutorial capacities" in the alternative. (*Id.* at ¶7.) More specifically, Michael alleges that the former prosecutors "breached their duty to investigate [the murder] and instead" committed serious misconduct (*id.,* at PAGEID#11). Michael alleges that, in their non-advocacy capacities, the former prosecutors suppressed, destroyed, and fabricated specific material evidence (*id.* at ¶¶56-59); that they encouraged illegal behavior to manipulate the criminal proceedings (¶¶60-61); and that, "in their investigatory capacities" they committed other similar misconduct not yet known (¶¶62-63). Under *Buckley, Rouse, Spurlock,* and the other above-cited precedent, the various investigative conduct, illegal conduct, and other non-advocacy conduct alleged here does not benefit from absolute immunity.

Defendants do not dispute the legal rules set forth above but rather assert that Michael completely fails to allege that Keim and Bombik acted outside their protected roles as advocates when they committed the at-issue misconduct. (Defs.' Mot., ECF No. 22, PAGEID#169-170). This simply misreads the Complaint. Michael has alleged that the prosecutor misconduct here occurred in an advocacy, or investigative, or other capacity, but without discovery, he cannot know which. Notwithstanding the necessary alternative pleading, Michael has specifically pleaded his claims against the former prosecutors such that they are on "notice" of the "claims against them." *Iqbal*, 556 U.S. at 678. Viewing the Complaint in the light most favorable to Michael, the Court should not—at least at this stage of the proceedings, without discovery on when and in what role the former prosecutors did what they did—dismiss based upon absolute immunity.

### ii. The Prosecutor Defendants are not entitled to qualified immunity.

The Court should reject Defendants' argument that if Keim and Bombik are not absolutely immune from suit, then qualified immunity shields them from liability. (Defs.' Mot., ECF No. 22, PAGEID#170-71.) As an initial matter, the Court should decline to confer qualified immunity

because that doctrine should also be abolished, based upon all the same scholarship discussed above showing that §1983 abrogates common law immunities. *See supra; see also Green v. Thomas,* 734 F. Supp. 3d 532, 560 (S.D. Miss. May 20, 2024).

Alternatively, the Court should decline to consider qualified immunity at the pleading stage, because "it is generally inappropriate for a district court to grant a 12(b)(6) motion to dismiss on the basis of qualified immunity." *Wesley v. Campbell*, 779 F.3d 421, 433 (6th Cir. 2015); *see also Hart v. Hillsdale Cty.,* 973 F.3d 627, 635 (6th Cir. 2020) (collecting cases). The Sixth Circuit has recognized this proposition even though "entitle[ment] to qualified immunity is a threshold question to be resolved at the earliest possible point." *Id.* (citing *Vakilian v. Shaw*, 335 F.3d 509, 516 (6th Cir. 2003)). Resolving the tension between these two propositions, the Sixth Circuit has recognized that the "earliest possible point" is "usually summary judgment and not dismissal under Rule 12." *Id.* at 433–34 (citing *Evans–Marshall v. Bd. of Educ. of Tipp City Exempted Village Sch. Dist.*, 428 F.3d 223, 235 (6th Cir. 2005)) (Sutton, J., concurring) (noting the fact-intensive nature of the clearly established analysis makes it "difficult for a defendant to claim qualified immunity on the pleadings *before* discovery") (emphasis in original)).

Should the Court consider qualified immunity at this stage, it should conclude that Michael adequately alleged that Keim and Bombik violated his clearly established rights. As set forth above, Michael's federal §1983 claims against Keim and Bombik in their individual capacities are based upon *Brady* violations, fabrication of evidence, unlawful identification procedures, and malicious prosecution. Black letter law in the Sixth Circuit, including specifically in wrongful conviction cases, holds that Michael's right to be free from each of these varieties of civil rights violations was clearly established by 2001. *Gillispie v. Miami Twp.,* 18 F.4th 909, n.2 (6th Cir. 2021) (summarizing clearly established law as to each of these claims); *see also Moldowan v. City*

*of Warren,* 578 F.3d 351, 376 (6th Cir. 2009) (right against *Brady* violations clearly established); *Jackson v. Cleveland,* 925 F.3d 793, 825 (6th Cir. 2019) (right against fabrication clearly established); *Gregory v. City of Louisville*, 444 F.3d 725, 745 (6th Cir. 2006) (right against biased witness identification process, right to fair trial clearly established); *Miller v. Maddox*, 866 F.3d 386, 395 (6th Cir. 2017) (right against malicious prosecutor clearly established).

Rather than addressing the clearly established law with respect to each of Michael's claims, Defendants argue they "would not have been on notice that their purported actions, while prosecuting Plaintiff, violated a clearly established right." (Defs.' Mot., ECF No. 22, PAGEID#172.) It does not make sense to argue that prosecuting attorneys lacked notice of constitutional law involving the rights of criminal defendants that had been clearly established since the 1970s. At minimum, Defendants' argument misapprehends the clearly established law inquiry. The doctrine asks whether a plaintiff alleged the violation of a consituitonal right, and whether that right was clearly established at the time of the violation. *Pearson v. Callahan,* 555 U.S. 223, 232 (2009). Defendants do not challenge the first prong, and as set forth above, each of the rights alleged was clearly established in 2001 and Defendants do not argue otherwise.

Finally, notwithstanding the claim-by-claim analysis, Michael submits that it should have been "obvious" that the misconduct done to him violated the law, and this itself is sufficient to overcome immunity. *Hope v. Pelzer,* 536 U.S. 730, 738 (2002). For these reasons, the Court should deny Keim and Bombik qualified immunity, at minimum during the pleading stage of this case.

### iii.     The Prosecutor Defendants are not entitled to state law immunity.

The Court should reject Defendants' argument that Keim and Bombik are absolutely immune from the claims Michael brought under state law. (Defs.' Mot., ECF No. 22, PAGEID#172.) First, with respect to the common law claims (breach of duty and state-law malicious prosecution or abuse of process), Defendants argue that Keim and Bombik are absolutely

immune for all the same reasons as they are absolutely immune from the federal causes of action. Defendants correctly supply that the Ohio rule on prosecutorial immunity generally "mirror(s) the federal rule," including as to the exceptions for conduct done outside the advocacy role. *E.g., Beckett v. Ford,* 384 F. App'x 435, 452 (6th Cir. 2010). Therefore here, for all the same reasons discussed *supra,* to the extent absolute immunity does not bar Michael's federal claims, neither does it bar his state claims, at least at the pleading stage.

Second, with respect to Michael's statutory claim under Ohio Revised Code §2307.60, absolute prosecutorial immunity is not available as a shield to liability under that statute in any event. R.C. §2307.60 is a broad remedial statute which does not exempt nor immunize any government conduct. To the contrary, that statute's text specifically ensures that claimants can recover against state actors for violations of their constitutional rights, without exception. R.C. §2307.60(B)(4). For this additional reason, the individual former prosecutor defendants are not absolutely immune from suit for the state statutory claim.

### iv. The Eleventh Amendment has nothing to do with the claims against the Prosecutor Defendants in this case.

The Court should disregard Defendants' argument that the "Eleventh Amendment bars Plaintiff's official-capacity claims against [] Keim and Bombik" (Defs.' Mot., ECF No. 22, PAGEID#174-75). This is because Michael did not raise official capacity claims against these Defendants. (Compl., ECF No. 1., at ¶7 ("They are sued in their individual capacities.")) Michael sued former prosecutors Keim and Bombik in their individual capacities only. Michael separately sued Cuyahoga County under *Monell v. Dep't of Soc. Servs.,* 436 U.S. 658 (1978) only, which he discusses *infra*. However, the *Monell* claim here is independent; Michael does not sue the County *through* an official capacity suit against the prosecutors but rather on the basis of its own acts. Therefore, Defendants' discussion of how courts treat official capacity claims against prosecutors

is inapposite because no such claims are at issue here. This is a nuanced area of law, the erroneous application of which would seriously confuse the already-complex immunities issues before the Court. Michael urges the Court to disregard this part of Defendants' Motion (PAGEID#174-75).

### B. The Court should not dismiss the claims against Cuyahoga County.

### i. Cuyahoga County is the proper defendant for the *Monell* claim.

The Court should reject the County's argument that it cannot be sued under *Monell* where the *Monell* claim relates to a pattern and practice involving the prosecutor's office. The law does not support Defendants' position on this. No court has held that a classic pattern-and-practice claim against a County transforms into an Eleventh-Amendment-barred claim against the state just because the County's criminal justice policies are the ones being challenged. Just as absolute immunity does not automatically attach to certain actions "merely because they are performed by a prosecutor," *Buckley,* 509 U.S. at 273, County policy does not automatically become immunized as an act of the state merely because it relates to the prosecutor's office.

Generally, *Monell* permits plaintiffs to recover against local jurisdictions like Cuyahoga County where the locality's official policy caused the plaintiff's civil rights violations. Because §1983 liability is not available in *respondiat superior, Monell* liability must be premised upon the local jurisdiction's "*own* illegal acts." *Connick v. Thompson*, 563 U.S. 51, 60 (2011), quoting *Pembaur v. City of Cincinnati*, 475 U.S. 469, 479 (1986) (emphasis original). In other words, in a case like this, Michael Buehner must allege that the County maintained an official policy that caused its individual prosecutors to violate his rights. There are generally four ways in which Michael may demonstrate the County's official policy. He may offer evidence (a) of an official policy or legislative enactment; (b) that an official with final decision making authority ratified illegal actions; (c) of persistent inadequate training or supervision; or (4) of a custom of tolerance to civil rights violations. *Jackson v. City of Cleveland*, 925 F.3d 793, 828 (6th Cir. 2019).

Here, Michael Buehner alleges that he will prove Cuyahoga County's official policy of committing *Brady* violations and other misconduct to secure wrongful convictions using all four methods of proof. This is a classic *Monell* claim, pleaded similarly to the claim in *Connick* itself: the County maintained a policy that caused its prosecutors to violate criminal defendants' civil rights including Michael's. (*E.g.,* Compl., ECF No. 1, at ¶¶8, 79, 105-117, 189-198.) Like in *Connick*, Michael's *Monell* claim alleges that the County's official policies caused the violations of his rights.[1] This is not a lawsuit where Michael seeks to hold the County liable through individual prosecutors' bad acts.

A *Monell* claim alleging that the County's official policy of civil rights violations caused a wrongful conviction is actionable under §1983 against the County. It is not a suit against the state. Defendants urge the Court to find that because Michael's claim involves prosecutors, and because prosecutors sometimes act as agents of the state, that the state is the real party in interest here and the suit is barred by the Eleventh Amendment. When confronted with arguments like the one Defendants make, circuit courts have specifically declined to find that the state agency analysis sometimes applied to official capacity suits against prosecutors also applies to *Monell* claims relating to County policies. *Bellamy v. City of New York,* 914 F.3d 727, 757-61 (2d Cir. 2019) (city, not state, was the "proper policy making authority" and proper defendant for *Monell* claim involving city prosecutor's office); *see also Goldstein v. City of Long Beach,* 715 F.3d 750, 753-62 (9th Cir. 2013) (*Monell* claim properly brought against county, rather than state, related to training and policy in the prosecutor's office); *see also Burge v. Parish of St. Tammany,* 187 F.3d 452, 467 (5th Cir. 1999). Relatedly, as the Supreme Court has said, the immunities available to

---

[1] Harry Connick did not prevail on his particular facts, but the United States Supreme Court applied the appropriate analysis to his claim, and did not apply any of the analyses Defendants urge here.

individual defendants under § 1983 do not extend to the municipalities who employ them. *See, e.g., Leatherman v. Tarrant Cnty. Narc. Intel. & Coord. Unit,* 507 U.S. 163, 166 (1993) ("These decisions make it quite clear that, unlike various government officials, municipalities do not enjoy immunity from suit—either absolute or qualified—under § 1983"); *see also Owens v. City of Independence,* 445 U.S. 622, 638 (1980) ("[T]here is no tradition of immunity for municipal corporations, and neither history nor policy supports a construction of § 1983 that would justify" immunity for a locality.) Thus, the legal analyses applied to prosecutor actions versus County-wide policies is simply different. The immunity and state agency issues sometimes relevant to prosecutor conduct do not flow up to *Monell* claims against counties.

Defendants conflate the immunities and state agency issues that arise in official capacity suits against prosecutors with the separate issues relevant to the *Monell* claim at bar. Although courts have barred official-capacity suits against prosecutors when they personally act as agents of the state, *see Pusey v. City of Youngstown,* 11 F.3d 652, 658 (6th Cir. 1998), courts apply a different framework altogether to *Monell* claims attacking county policies themselves. *See Connick,* 531 U.S. at 60. When a plaintiff raises a *Monell* claim against a city or county, the traditional *Monell* analysis applies. For this reason, the cases the County cites for the proposition that it is not susceptible of suit and that the state is the real party in interest, are inapposite. (Defs.' Mot., ECF No. 22, PAGEID#175-78 (citing *Pusey, Cady v. Arenac Cty.,* 574 F.3d 334, 345 (6th Cir. 2009), and *Burchwell v. Warren Cty., Ohio,* 582, F. App'x 656, 656 (6th Cir. 2014) (all analyzing claims involving individual prosecutors acting as state agents, rather than claims involving County policies related to conduct, supervision, training, or the like).

By contrast, a "governmental entity, such as [a] County, can be found liable under § 1983… where the entity itself causes the constitutional violation at issue." *Robinson v. Mahoning County*,

No. 4:16CV3011, 2017 WL 1399931, *4 (N.D. Ohio April 19, 2017) (claims against individual prosecutors in their official capacities were barred, but *Monell* claim against Mahoning County was not). The Sixth Circuit explained this distinction in *D'Ambrosio v. Marino*, 747 F.3d 378, 387 (6th Cir. 2014). In that case, a wrongfully convicted man sued Cuyahoga County in part on the basis that its former prosecutors Carmen Marino and Bill Mason withheld *Brady* evidence at his trial. In analyzing D'Ambrosio's claim, the Court held that these individual prosecutors were immune as agents of the state—but also held that, had D'Ambrosio sufficiently alleged a classic *Monell* theory regarding the County's own policies, training, and the like, then the County would be liable under *Monell. Id.* at 386-88; *accord Brotherton v. Cleveland*, 173 F.3d 552, 565-566 (6th Cir. 1999) ( when "a State [has] authorized a local entity to act within certain bounds, and the local entity [has] formulated a policy in response," that policy is attributable to the local entity, not to the state).

Here, Michael Buehner has pleaded a classic *Monell* claim against the County, exactly as *D'Ambrosio* and *Connick* instruct. Michael alleged that the County itself, and through its final policymakers, maintained an official policy and custom of violating the *Brady* rule and ratified and failed to train or supervise employee conduct related to the same. Michael alleged that the County violated the civil rights of criminal defendants including Michael through the culture, rules, and training and supervision practices of its prosecutor's office. Such a claim is not a claim against prosecutors as agents for the State of Ohio but a claim against Cuyahoga County as a maker of local policy. For these reasons, when reading the County's brief, this Court should disregard the County's discussion of whether individual prosecutors acted as state agents, because that line of cases is not relevant to the *Monell* claim at issue here. (Defs.' Mot., ECF No. 22, at PAGEID#173-

74, 175-76, and 177-79.) The Court should conclude that the County, not the state, is the proper party in interest and that Michael has properly alleged his *Monell* claim.

### ii. The County is not entitled to dismissal based upon the sufficiency of the pleadings.

The Court should reject Defendants' contention that Michael has failed to plead facts sufficient to state a *Monell* claim against the County. As explained above, there are generally four ways a plaintiff can plead a *Monell* claim. Michael has pleaded them all. As a threshold matter, the County incorrectly assumes that Michael only pleaded the "second and fourth" *Monell* theories, in other words, ratification by a final policymaker and a custom of tolerance to constitutional rights violations. (Defs.' Mot., ECF No. 22, at PAGEID#178). This is incorrect. Michael has also pleaded that the County maintained an official policy causing violations of the *Brady* rule and that the County's failure to train and supervise its prosecutors caused violations of the *Brady* rule. (Compl., ECF No. 1 at ¶¶190-97, 105-07, 109-110, 113, 116-117.) However, because the County chose only to argue its Motion as to two *Monell* theories, it forfeited the argument that Michael inadequately pleaded the other two *Monell* theories. *McPherson v. Kelsey,* 125 F.3d 989, 995–96 (6th Cir. 1997) (argument not made in the primary motion is forfeited.) The Court should therefore deny Defendants' Motion at least in part, as two of the four *Monell* theories are unchallenged.

As to the two *Monell* theories the County does challenge, ratification and custom, Michael adequately pleaded them both. First, Michael pleaded that a final policymaker for the County ratified the *Brady* violations at issue. The "County Prosecutor c[an] establish county policy under appropriate circumstances." *Pembaur*, 475 U.S. at 484. Here, Michael alleged that the County's official policy of violating the *Brady* rule in criminal investigations and prosecutions began with a written letter from longtime elected prosecutor John T. Corrigan (in office from 1956 through 1991). (Compl., ECF No. 22, at ¶¶106-108.) That policy remained in place and Corrigan, and

future officeholders, maintained it and ratified the *Brady* violations routinely committed pursuant to it. (¶¶109-114 (alleging specifics of policy and its enactment, and examples of its use over years)). Michael alleged that the policy and its ratification caused the same *Brady* violations that the Eighth District already held happened to him. (¶¶115, 117, 190-98). In these ways Michael alleged his official policy and a ratification theories of *Monell* liability.

Defendants' arguments to the contrary are unavailing. The County downplays Corrigan's written letter as "insignificant," (PAGEID#177) but the Sixth Circuit has held this very letter could establish a policy under *Monell. Jackson v. City of Cleveland,* 925 F.3d 793, 829-34 (6th Cir. 2019). The County also complains that Michael "failed to attach this letter to their filing, thereby providing no tangible evidence," (PAGEID#177) but a Rule 12 motion does not test evidence, only pleadings. The parties here are not at summary judgment where Michael has been able to adduce evidence currently in the County's own control; discovery has barely opened. Finally, the County repeats its refrain that an elected prosecutor could not make County policy because he could only act as an agent of the state. (PAGEID#178). This argument fails for all the reasons already explained. Michael's *Monell* claim is not against any prosecutor himself but rather challenges County policies that Corrigan initiated and that the office and its policymakers have maintained ever since. *See, e.g., Jackson,* 925 F.3d at 829 (Corrigan letter could establish local policy and practice which went beyond Ohio Criminal Rule 16); *D'Ambrosio,* 747 F.3d at 387 (distinguishing liability premised upon acts of handful of individual prosecutors liability premised upon formal policy and ratification by decisionmaker); *Brotherton*, 173 F.3d at 565-566 (*Monell* claim is proper when local unlawful policy differs from state law on similar subject).

Similarly, Michael sufficiently pleaded that the County maintained a custom of tolerance to *Brady* violations so persistent that it made the misconduct he suffered predictable. (Compl., ECF

No. 1, ¶¶106-07, 110-12, 116.) Michael provided a dozen specific examples of wrongful conviction cases involving Cuyahoga County's withholding of exculpatory evidence spanning decades, and pleaded this was a non-exhaustive list. (¶111-12.) Michael alleged that the County's custom was so entrenched for so long that it caused the violations at issue here. (¶114.)

Defendants again downplay these many examples as a "handful," (PAGEID#179) but the pleadings, caselaw, and sheer numbers belie that. Cuyahoga County not only has the most wrongful convictions in Ohio history, but it is top ten in the entire nation. *See* University of Michigan National Registry of Exonerations "Top Ten Counties," *available at* https://www.law.umich.edu/special/exoneration/Pages/Top-Ten-Counties.aspx. As recently as last year, federal courts have recognized more instances of the Cuyahoga County Prosecutor's office withholding exculpatory evidence from exonerees. *Jackson v. Cleveland,* 64 F.4th 736, 747 (6th Cir. 2023). For decades, the Cuyahoga County Prosecutor's Office has maintained an unconstitutional pattern and practice resulting in the suppression of exculpatory evidence resulting in dozens of wrongful convictions like Michael Buehner's. There are still more wrongful convictions that are not yet uncovered. At this stage, Michael need not prove it, only plausibly plead it, and he has. *See Jackson v. Cleveland,* 622 F. Supp. 636, 644 (N.D. Ohio 2022) (denying motion to dismiss similar claim because "in the present procedural posture Plaintiff enjoys the benefit of an inference that the custom of tolerating…violations of constitutional rights was so firmly entrenched that it persisted…[m]oreover the complaint contains extensive detailed allegations….").

In sum, the County only challenges Michael's pleadings as to two of the four theories of *Monell* liability, and Michael has pleaded all four sufficiently under Rule 12. At this stage of the case, Michael need only "plausib[ly]" allege his claim such that he puts the County on "notice "of

his theories and the underlying facts. *Iqbal*, 556 U.S. at 678. He has amply done so here, articulating pages of specific examples of misconduct and resulting wrongful convictions over decades which evince the County's actionable policy of causing *Brady* violations. For these reasons, the Court should deny the County's Motion.

### iii. Plaintiff's state law claims are not brought against Cuyahoga County

The Court should disregard the County's arguments that it is immune from suit or not *sui juris* as to Michael's state law claims (Defs.' Mot., ECF No. 22, PAGEID#182-186) because Michael did not bring his state law claims against the County. Michael made one claim against Cuyahoga County, as discussed *supra,* a *Monell* claim premised upon the underlying violations of his federal constitutional rights. Without taking a position on whether Ohio political subdivision immunity *could* protect the County from tort claims such as Michael brought here, or whether the County is subject to suit under R.C. § 2307.60, Michael asks the Court to construe the Complaint as not raising Counts 5-8 against the County. Michael only alleges Count 9 against the County. Thus, the Court should disregard this part of Defendants' Motion (PAGEID#182-86).

### IV. Conclusion

The Court should deny the County Defendants' Motion. With respect to the individual former County prosecutors, Defendants have only moved on the basis of immunity, and for the reasons discussed here, no immunities attach. With respect to the County itself, Defendants move based upon the sufficiency of the pleadings, and for the reasons discussed here Michael has adequately pleaded his *Monell* claim. For the reasons set forth above, the Court should deny Defendants' Motion and permit Michael discovery to prove up his allegations as he seeks justice for his over 20 years wrongfully imprisoned.

Respectfully submitted,

*/s/Elizabeth Bonham*

Sarah Gelsomino (0084340)
Elizabeth Bonham (0093733)
FG+G
50 Public Square, Suite 1900
Cleveland, OH  44113
T: 216-241-1430 / F: 216-621-0427
*sarah@FGGfirm.com*
*elizabeth@FGGfirm.com*

Jacqueline Greene (0092733)
FG+G
35 East 7th Street, Suite 201
Cincinnati, OH  45202
T: 513-572-4200 / F: 216-621-0427
*jacqueline@FGGfirm.com*

Russell A. Randazzo (0082221))
Randazzo Law, L.L.C.
55 Public Square, Suite 2100
Cleveland, OH  44113
T: 216-350-4434 / F: 216-274-9318
*russell@rrandazzolaw.com*


*Counsel for Plaintiff Michael Buehner*

**CERTIFICATE OF COMPLIANCE WITH LOC. R. 7.1**

I certify that this memorandum adheres to the page limitations set forth in Northern District of Ohio Local Rule 7.1, as it does not exceed 20 pages.

*/s/ Elizabeth Bonham*
*One of the Attorneys for Plaintiff*

**CERTIFICATE OF SERVICE**

I certify that on January 13, 2025, a copy of the foregoing was filed electronically. Notice of this filing will be sent to all registered parties by operation of the Court's electronic filing system. Parties may access this filing through the Court's system.

*/s/ Elizabeth Bonham*
*One of the Attorneys for Plaintiff*